# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| RUMBLE INC., <br><br> Plaintiff, <br><br> v. <br><br> NANDINI JAMMI, CLAIRE ATKIN, and JOHN DOE NOS. 1–10, <br><br> Defendants. | **Case No. 8:23-cv-02718-CEH** <br><br> **RUMBLE'S RESPONSE TO DEFENDANTS' <u>MOTION TO DISMISS</u>** |

## INTRODUCTION

It is defamatory to accuse a business of hypocrisy. It is defamatory to accuse a business of nonexistent financial risks. And it is defamatory to accuse a business of defrauding investors. That is exactly what Defendants did here. They waged a smear campaign against Rumble, publishing false claims about Rumble's revenue sources and financial health expressly to "demonetiz[e] Rumble" and drive it out of business. (Am. Compl. ¶ 7, ECF No. 42.)

Rumble has built its brand in large part around a commitment to achieving independence from dominant technology platforms like Google (i.e., "Big Tech"). It has expended substantial resources to further that objective. Defendants knew this about Rumble, so they sought to discredit Rumble in the eyes of current and potential investors, users, and content creators who share Rumble's aversion to Big Tech.

Defendants repeatedly—and falsely—accused Rumble of being heavily

dependent on revenue from Google Ads, even though they knew Google Ads accounted for a small percentage of Rumble's overall revenue. They did this to: (1) impugn Rumble's reputation for business integrity by casting Rumble as hypocritical; (2) undermine confidence in Rumble's financial soundness by claiming that Rumble would not be viable without revenue from Google Ads; and (3) imply that Rumble defrauded investors by failing to report a material financial risk in its public disclosures. As a result, Rumble suffered reputational and financial harm. This Court should deny Defendants' Motion to Dismiss because Rumble adequately pleads claims for defamation and defamation by implication.

## FACTUAL BACKGROUND

As a content-neutral video platform, Rumble permits content espousing diverse views across the political spectrum. Rumble does not arbitrarily censor content based on political viewpoint. Defendants Nandini Jammi and Claire Atkin oppose Rumble and its mission because they disagree with the political views held by some content creators who post on Rumble. Driven by their disdain for Rumble, Defendants—along with other activist media monitoring organizations—waged a coordinated campaign based on false information to destroy Rumble's business.

Rumble is asserting claims against Jammi, Atkin, and unidentified John Doe defendants for defamation and defamation by implication based on statements Jammi and Atkin made in four separate posts on X (formerly Twitter) between

August and October 2023 and in an article they published online in October 2023. Defendants claimed that Rumble is primarily monetized by and wholly dependent on Google Ads. In reality, Google Ads accounts for less than one percent of Rumble's revenue. (Am. Compl. ¶ 87.) Defendants' purpose in making these false statements was to damage Rumble's business and brand. (*Id.* ¶¶ 62–66.) As a result, Rumble lost advertisers, its stock price dropped, and it incurred tens of thousands of dollars in public-relations and legal fees to mitigate the harm Defendants caused. (*Id.* ¶¶ 18, 79–82.) Rumble filed its Amended Complaint on April 26, 2024. On May 10, Defendants moved to dismiss for failure to state a claim. (ECF No. 44.)

## LEGAL STANDARD

On motions to dismiss, courts apply the familiar plausibility standard, under which a plaintiff need only "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The threshold for surviving a motion to dismiss…is 'exceedingly low.'" *Mahoney v. City of Bradenton*, 2024 WL 1194453, at *2 (M.D. Fla. Mar. 20, 2024). Courts "must accept all factual allegations…as true," "draw all reasonable inferences…in favor of the plaintiffs," and "constru[e] the allegations in the light most favorable to [them]." *Phipps v. W.W. Contractors, Inc.*, 2013 WL 12394466, at *1 (M.D. Fla. Feb. 12, 2013).

# ARGUMENT

## I. The Amended Complaint Plausibly Alleges a Claim for Defamation.

The elements of defamation are (1) publication, (2) falsity, (3) "knowledge or reckless disregard" of falsity, (4) actual damages, and (5) that the statement was defamatory. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Defendants do not dispute that their statements were published to their hundreds of thousands of followers on X. They do not dispute that their statements are false. They do not dispute they were informed their statements are false. And they do not assert that their statements are privileged. They argue only that their statements are not defamatory, Rumble did not adequately plead damages, and Rumble did not adequately plead actual malice. These arguments are unavailing.

### A. Statements attacking Rumble's financial health are defamatory.

A statement is defamatory if it "injures [plaintiff's] business or…occupation." *Thomas v. Univ. of Miami*, 2022 WL 19300664, at *4 (S.D. Fla. Sept. 20, 2022). It need only be construed as defamatory "by a 'substantial and respectable' minority of the community." *Jews For Jesus*, 997 So. 2d at 1115. Where, as here, a statement is reasonably susceptible of more than one meaning, at least one of which is defamatory, "then it is for the jury"—not the court—"to say whether the words as applied to the plaintiff were in fact a defamation…under all the circumstances surrounding [their] publication, including extraneous facts." *Diplomat Elec., Inc. v.*

4

*Westinghouse Elec. Supply Co.*, 378 F.2d 377, 382 (5th Cir. 1967).[1] "The law has always been very tender of…words spoken of [tradesmen] in the way of their trade," Prosser & Keeton on the Law of Torts, § 112, at 790 (5th ed. 1984), and "a corporation may maintain an action…if it has been defamed by a false imputation about its financial soundness," 50 Am. Jur. 2d Libel & Slander § 328 (May 2024). Likewise, "[a] statement reflecting adversely on the business capacity…of a corporation…may be actionable." 53 C.J.S. Libel & Slander § 60 (May 2024). Here, Rumble pleads multiple ways in which Defendants' statements injured its business.

*First*, Rumble alleges that Defendants' statements harmed its business by falsely asserting that Rumble is wholly dependent on Google Ads. Rumble has built its brand, and created substantial value, through its commitment to achieving independence from Big Tech. (Am. Compl. ¶ 65.) Defendants' false accusations that Rumble relies on Big Tech for its financial survival have diminished that brand, casting Rumble as dishonest and hypocritical for disregarding one of its core tenets. Defendants' October 24, 2023 article, for example, states that "Rumble loves to boast about being free from Big Tech. In reality, the business appears to be heavily dependent on Google Ads." (*Id.* ¶ 13.) These statements undermine Rumble's reputation for integrity in its business by accusing Rumble of behavior that directly

---

[1] In its first published opinion, the Eleventh Circuit "adopt[ed] as precedent…the body of law of the old Fifth." *Bonner v. City of Prichard*, 661 F.2d 1206, 1210 (11th Cir. 1981) (en banc).

(Continued…)

contradicts its stated commitment to independence from Big Tech—i.e., hypocrisy[2]—and of lying to investors and other stakeholders.

The Florida Supreme Court long ago established that false allegations of hypocrisy are defamatory per se. In *Jones v. Greeley*, the Court held that statements "brand[ing] [the plaintiff] as a hypocrite," were "actionable" per se. 25 Fla. 629, 638–39 (1889); *see also id.* at 641 (implications of hypocrisy are "as libelous" as charging a person with hypocrisy directly). Other jurisdictions agree. *See Tucker v. Fischbein*, 237 F.3d 275, 283 (3d Cir. 2001); *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 189 (2d Cir. 2000) (attack on plaintiff's "trustworthiness as a businessperson" was defamatory per se); *Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1256 (9th Cir. 1997).[3]

Defendants argue that their statements are not defamatory because Google is the world's largest ad broker and countless companies depend on Google Ads. (Mot. at 10.) But "[n]o general rule can be laid down defining absolutely what words are defamatory and what are not. Words which would injure A's reputation, might do no harm to B's." *Diplomat Elec.*, 378 F.2d at 381. Defendants' false accusations that Rumble is highly reliant on Google Ads have injured Rumble's reputation for

---

[2] Merriam Webster Dictionary defines "hypocritical" as "characterized by behavior that contradicts what one claims to believe or feel." *Available at* https://www.merriam-webster.com/dictionary/hypocritical.

[3] *See also Dusabek v. Martz*, 249 P. 145, 148, ¶ 18 (Okla. 1926) ("[T]o charge one with being a hypocrite is libelous per se."); *Newby v. Times-Mirror Co.*, 160 P. 233, 236 (Cal. 1916) (same).

independence from Big Tech and are therefore defamatory, even though the same statements might not harm the reputations of other companies.

*Second*, Defendants concede that their statements accuse Rumble of being subject to a material financial risk that no longer exists. (Mot. at 9–10.) Such accusations undermine investor confidence in Rumble—as evidenced by the drop in Rumble's stock price after Defendants' false allegations (*e.g.*, Am. Compl. ¶ 81)—further harming Rumble's business and reputation. Statements such as these, which "deter third persons from dealing with" Rumble, are defamatory and fully actionable. *Diplomat Elec.*, 378 F.2d at 381; *Kilgore Ace Hardware, Inc. v. Newsome*, 352 So. 2d 918, 920 (Fla. 2d DCA 1977). So too are statements that impugn the "health and stability of" a company. *Visant Corp. v. Barrett*, 2013 WL 3450512, at *7 (S.D. Cal. July 9, 2013).

Defendants insist that their statements cannot be defamatory because in 2021 (two years before Defendants' statements), Rumble derived 86% of its revenue from Google Ads, and in the third quarter of 2022 (a year before Defendants' statements), Rumble derived 19% of its revenue from Google Ads. (Mot. at 11.) But these facts—which must be construed in the light most favorable to Rumble—support Rumble's position. Rumble alleges that, when Defendants made their defamatory statements, they were fully aware of Rumble's concerted efforts to decrease its reliance on external advertising revenue. (Am. Compl. ¶ 71.) Between 2021 and 2022, before

7

its initial public offering, Rumble expended significant resources to strengthen its business by launching its own advertising platform (the Rumble Advertising Center ("RAC")) that abolished Rumble's dependence on Google Ads and eliminated what Rumble recognized as a material financial risk at that time. (*Id.* ¶ 5.) To claim falsely that this risk still existed in late 2023—and that Rumble ***would not be viable*** without Google Ads—harmed Rumble's business and jeopardized the success of the RAC by calling Rumble's financial soundness into question. (*Id.* ¶ 18.)

Defendants also attempt to graft onto the elements of defamation a nonexistent requirement that, to be defamatory, a statement about a corporation must allege "express or implied malfeasance." (Mot. at 13.) But no such limitation exists. To be defamatory, a statement need only tend to injure a company in its business. *See Blythe v. Fifth Third Bank*, 2010 WL 11432601, at *6 (M.D. Fla. Jan. 19, 2010) (statements "impugning Plaintiff's credit" were libelous per se); *Meyerson v. Hurlbut*, 98 F.2d 232, 234 (D.C. Cir. 1938) (statements suggesting lenders "refused to deal with [plaintiff]…because he was a poor risk" were defamatory). Regardless, Defendants' statements accuse Rumble of express and implied malfeasance, which Defendants concede is defamatory. The statements imply that Rumble defrauded investors by under-reporting or failing to report a material source of revenue in its SEC filings and expressly accuse Rumble of surreptitiously straying from its publicly stated mission to become independent from Big Tech. (Am. Compl. ¶ 66.)

8

Defendants claim that "to understand that Rumble was 'lying to investors' about its reliance on Google, a reader would need to be aware of at least one public statement from Rumble that it earns little to no money from Google Ads." (Mot. at 18.) Defendants create a target that is too small. In reality, to understand this defamatory meaning, all a reader needs to know is that one of Rumble's core missions is to be free from Big Tech—something that anyone following Defendants' social media feeds would be aware of.[4] Indeed, Defendants state in their October 24, 2023 article that "Rumble loves to boast about being free from Big Tech." But even using Defendants' standard, at least 14,000 people who viewed Jammi's response to Rumble's December 26, 2022 post on X, in which Rumble informed Jammi directly that Google Ads generated less than 20% of Rumble's overall revenue, were aware that Rumble earned little revenue from Google Ads and thus understood Defendants' defamatory meaning that Rumble was lying to investors. (Am. Compl. ¶ 68.)

In short, Rumble alleges multiple, plausible defamatory meanings. At a minimum, it is a question for the jury whether Defendants' statements can be read to impart the defamatory meanings ascribed to them.

### B. Defendants' statements are defamatory per se. Regardless, the Amended Complaint adequately pleads special damages.

Rumble alleges that Defendants' statements are defamatory per se. Thus,

---

[4] (*See, e.g.*, Am. Compl. ¶¶ 10, 13, 53, 72.)

damages are presumed. *See, e.g.*, *Wolfson v. Kirk*, 273 So. 2d 774, 777 (Fla. 4th DCA 1973). "[A] written publication constitutes libel per se if it…tends to injure one in the individual's trade or profession." *Saulsberry v. Elder*, 2022 WL 17830489, at *2 (S.D. Fla. Dec. 20, 2022). For all the reasons above, Defendants' statements have injured Rumble in its trade and profession.

Defendants claim their statements are not defamatory per se because extrinsic facts are needed to understand their defamatory meaning. Not so. Jammi's August 16, 2023 post stands on its own: "Rumble is all posturing, all the time. They're not a Google Ads killer or even close to it – they depend on Google for their business. We're talking a house of cards." And her October 3, 2023 post states, "Without @GoogleAds, Rumble would not be viable." No extrinsic facts are needed to understand the defamatory meaning of these statements, and it is clear from the face of these posts that Jammi was falsely conveying that Rumble would collapse without Google Ads. Not only do these statements tend to "prejudice [Rumble] in the conduct of its trade or business" by "deter[ring] third persons" (e.g., putative investors and advertisers (Am. Compl. ¶ 49)) "from dealing with it," *Diplomat Elec.*, 378 F.2d at 381; Restatement (Second) of Torts § 561 (1977), but they actually deterred investors and advertisers from dealing with Rumble as evidenced by the lost ad revenue and decrease in Rumble's stock price after Defendants published their false claims (Am. Compl. ¶¶ 69–70).

10

Defendants' Motion does not address either of these posts directly, other than to argue that the statement "house of cards" is nonactionable hyperbole. The expression "house of cards" is not hyperbole. It has a precise meaning: "a structure, situation, or institution that is insubstantial, shaky, or in constant danger of collapse."[5] And that meaning is exactly what Jammi intended to convey about Rumble, as confirmed by her October 3 post that "[w]ithout @GoogleAds, Rumble would not be viable." Multiple courts have found statements using the expression "house of cards" to be actionable. *See Bass v. United Dev. Funding, L.P.*, 2019 WL 3940976, at *20 (Tex. App. Aug. 21, 2019) (statements that entity was "billion dollar house of cards" "on the verge of collapse," that "face[d] significant bankruptcy risk, which would leave its shares virtually worthless" actionable).[6]

Similarly, no extrinsic facts or explanatory information are needed to understand that the October 24 article accused Rumble of hypocrisy in its business. Because that defamatory meaning is clear on the face of Defendants' statements, which harmed Rumble in its business, Rumble need not plead special damages.[7]

Regardless, Rumble adequately alleges special damages, including lost ad

---

[5] Merriam Webster Dictionary, "house of cards," *available at* https://www.merriam-webster.com/dictionary/house%20of%20cards (last visited July 1, 2024).

[6] *See also Solomon Found. v. Christian Fin. Res., Inc.*, 2023 WL 3058321, at *4 (D. Md. Apr. 24, 2023); *Long v. Cooper*, 848 F.2d 1202, 1203 n.1 (11th Cir. 1988).

[7] Rumble also does not need to plead special damages with respect to its defamation by implication claim. *Anderson v. Smith*, 2020 WL 10058207, at *5 (M.D. Fla. Mar. 24, 2020).

11

revenue, a drop in stock price, and legal and public-relations costs. (Am. Compl. ¶¶ 79–82.) Specifically, the Amended Complaint alleges that "major advertisers have dropped Rumble" and "putative advertisers have avoided purchasing ads through the [RAC]" because of Defendants' statements. (*Id.* ¶ 80.)

Defendants do not dispute that lost ad revenue constitutes special damages. They argue only that Rumble "failed to allege the basic details necessary to support this claim." (Mot. at 19.) Defendants rely on *Flynn v. CNN*, 2023 WL 5985196 (M.D. Fla. Mar. 17, 2023). But *Flynn* did not hold that the plaintiff's allegations of special damages were insufficiently particular. Rather, it held that the plaintiff failed to "allege 'an actual…or realized loss attributable to her diminished stature in the community.'" *Id.* at *6 (citation omitted). In *Flynn*, the only special damages the plaintiff alleged were that her credit cards were cancelled and then reinstated. The court concluded that the temporary cancellation of the plaintiff's credit cards was not "pecuniary loss." *Id.*

Lost ad revenue, however, is pecuniary loss. Rumble's allegations of lost ad revenue are nearly identical to allegations of special damages that the court held were sufficient in *ThermoLife Int'l, LLC v. Vital Pharmaceuticals Inc.*, 2020 WL 409594, at *2 (S.D. Fla. Jan. 24, 2020). There, the counterclaimant alleged "damages to its reputation as well as to its business, including lost sales and expenses incurred to counteract the disparaging effect of publication." Counterdefs.' Mot. to Dismiss

at 6, *ThermoLife*, 19-cv-61380 (S.D. Fla. Nov. 18, 2019).[8] The court held that "special damages are sufficiently pleaded, as VPX explicitly states that it seeks lost profits and counter-promotion costs…[F]ederal pleading standards do not require more." *ThermoLife*, 2020 WL 409594, at *2; *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1344−45 (M.D. Fla. 2003).

Rumble also alleges that Defendants' statements caused Rumble's stock price to drop and its market capitalization to decline by $185 million. At the motion-to-dismiss stage, such allegations are sufficient. *See Sirer v. Aksoy*, 2021 WL 4952610, at *4 (S.D. Fla. Oct. 25, 2021) (denying motion to dismiss and finding allegations that "Defendant made the remarks as part of a scheme to depress the price of AVAX in favor of the crypto-assets he promotes" were sufficient to plead damages).[9]

Finally, "expenses in remediating potential reputational harm" are special damages. David Elder, Defamation: A Lawyer's Guide § 9.3 (Oct. 2023); s*ee also Sirer*, 2023 WL 3166453, at *8 ("[S]pecial damages include actual expenditures by plaintiff to repair his or her reputation."); *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 161 (Tex. 2014) ("[O]ut-of-pocket consultant

---

[8] This motion is attached as **Exhibit 1** to the Declaration of Nicholas J. Brechbill filed herewith.

[9] The Court ultimately dismissed the claim, but only after an evidentiary hearing where the plaintiff was given an opportunity to submit expert analysis in support of its claims for special damages but still failed to show actual pecuniary loss. *Sirer v. Aksoy*, 2023 WL 3166453 (S.D. Fla. May 1, 2023).

(Continued…)

expenses—expenses that would not have been incurred but for the Alert…are exactly the type of special damages one would incur in remedying the effects of a [defamatory] publication."). This includes expenses on public relations and other consultants,[10] as well as non-litigation attorneys' fees incurred to remedy the defamation. *See Jameson Land Co., LLC v. Mosaic Fertilizer, LLC*, 2016 WL 7206122, at *3 (M.D. Fla. Feb. 5, 2016) ("With regard to special damages, Jameson alleges it has incurred expenses, including attorneys' fees, to counteract the false publication. These expenses are sufficient to allege special damages.").[11]

Defendants' citation to *BCRE 230 Riverside LLC v. Fuchs*, 59 A.D.3d 282 (N.Y. App. Div. 2009), is inapposite. There, the court held that the allegations of special damages were not pleaded with sufficient particularity, as required by New York law. The case does not stand for the sweeping proposition that legal fees can never qualify as special damages. Subsequent cases applying New York law have held that "attorneys' fees incurred in an effort to mitigate damages and avoid litigation" are compensable special damages. *Robertson v. Doe*, 2010 WL 11527317, at *4 (S.D.N.Y. May 11, 2010) (awarding $37,129.64 in special damages for

---

[10] (*See* Am. Compl. ¶ 82.) Defendants do not meaningfully dispute that public-relations costs Rumble incurred to remedy the harm caused by Defendants' statements are special damages.

[11] *See also Bothmann v. Harrington*, 458 So. 2d 1163, 1170 (Fla. 3d DCA 1984); *Donald M. Paterson, Inc. v. Bonda*, 425 So. 2d 206, 208 (Fla. 4th DCA 1983); *IberiaBank v. Coconut 41, LLC*, 984 F. Supp. 2d 1283, 1304 (M.D. Fla. 2013); *cf. Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 209 (Fla. 4th DCA 2002) ("[T]he courts of this state have afforded the two torts [slander of title and defamation] identical treatment.").

attorneys' fees incurred to "identify[] websites publishing the defamatory article and send[] cease and desist letters"). Here, Rumble pleads that it spent $47,122.50 in legal and public-relations fees. Thus, even under New York's particularity standard (which does not apply in Florida or in federal court), Rumble's pleadings are more than sufficient.

### C. Rumble plausibly pleads that Defendants acted with actual malice.

The Amended Complaint offers both direct and circumstantial evidence that Defendants acted with actual malice. The actual malice inquiry is factual and does not lend itself readily to adjudication on a motion to dismiss. *See, e.g.*, *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979). Courts have recognized that defamation defendants almost never admit to knowingly lying. *Herbert v. Lando*, 441 U.S. 153, 170 (1979). Therefore, a plaintiff may prove actual malice through the cumulation of circumstantial evidence and appropriate inferences. *See, e.g.*, *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989); *Tavoulareas v. Piro*, 763 F.2d 1472, 1478 (D.C. Cir. 1985) (Even if "no piece of evidence…*alone* will support a verdict[,]…together all the evidence may…be clear and convincing. Pieces to a jigsaw puzzle sometimes appear nothing more than scattered fragments, but when placed together in proper fashion they create a clear picture.").

There are many indicia of actual malice. For example, "'[e]vidence of negligence, of motive and of intent may be adduced for the purpose of

establishing…the fact of a defendant's recklessness or of his knowledge of falsity.'" *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 709 (2007) (citation omitted). Actual malice can also be inferred "when a defendant publishes a defamatory statement that contradicts information known to him." *Hunt v. Liberty Lobby*, 720 F.2d 631, 645 (11th Cir. 1983).

In late 2022, Rumble told Jammi directly that Google Ads accounted for less than 20% of Rumble's overall revenue—and Jammi shared this information with her business partner, Atkin. (Am. Compl. ¶ 67.) Defendants also reviewed an October 2022 article reporting that "Google's ad network made up [only] 2% of total advertiser spending on Rumble.com in the last year.'"[12] (*Id.* ¶ 68.)

Defendants insist that Rumble's Q3 2022 Quarterly Report on SEC Form 10-Q confirms that they had no reason to doubt the truth of their statements.[13] But at the motion-to-dismiss stage, the Court cannot credit Defendants' claim in their reliance on the 10-Q. *Buffalo Wings Factory, Inc. v. Mohd*, 622 F. Supp. 2d 325, 331 (E.D. Va. 2007) ("[T]o the extent that Defendants have alleged facts that go beyond the scope of those pled in the Complaint…, the Court will not consider them.").

Moreover, Defendants misrepresent what the 10-Q reported. It stated that

---

[12] Defendants' Motion ignores entirely the allegation that they reviewed the October 2022 Media Matters article.

[13] Less than 19% and 2% of revenue are a far cry from **90% of revenue**, which Atkin falsely claimed Rumble derived from Google Ads in her September 26, 2023 post.

"[f]or the three and nine months ended September 30, 2022, approximately 19% and 33%, respectively, of Rumble's total revenue derived from *two* advertising networks, Google AdSense and Decide." (Browning Decl., Ex. I at 65, ECF No. 45 (emphasis added).) In other words, for the three-month period ending on September 30, 2022, Rumble derived 19% of its revenue from Google Ads *and* Decide combined. The Amended Complaint makes clear that revenue from Google Ads was only 9% of total revenue in Q3 2022. The 10-Q does not say that Google Ads alone "provided a material portion of Rumble's revenue." (Mot. at 22 n.20.) It says that "a small number of key advertising networks," which included Google Ads, Decide, and others, generated a material portion of Rumble's revenue. (Browning Decl., Ex. I at 65.) And the 10-Q does not say that Rumble would not be viable without revenue from Google Ads. It says that if Rumble's relationship with any third-party advertiser (including Google) were to terminate, Rumble would need to "secure and integrate new advertising partners or develop its own advertising platform, which could negatively impact its revenues and profitability." (*Id.*)

Defendants also knew when they made their statements—one year after this 10-Q—that Rumble had launched its own advertising platform, eliminating the risk that losing Google Ads revenue would materially affect Rumble's profitability. (*E.g.*, Am. Compl. ¶¶ 10, 58 (Jammi's August 16, 2023 post was in response to a post by Rumble's CEO regarding the RAC and Defendants acknowledged

"Rumble's in-house ad platform" in the October 24 article.).)

Defendants concede in their Motion that they knew that: (1) Rumble is a publicly traded company; (2) as a publicly traded company, Rumble is required to disclose "material reliance on Google Ads revenue"; and (3) after Q-3 2022, Rumble did not disclose in its SEC filings a material risk from the loss of Google Ads. (Mot. at 17–18.) Defendants therefore knew from the absence of any disclosures relating to Google Ads in subsequent SEC filings that after Q-3 2022, Rumble no longer considered revenue generated from Google Ads to be material.

Apart from this direct evidence of Defendants' knowledge of falsity, the Amended Complaint also alleges ample circumstantial evidence of actual malice, which, taken together, is sufficient to state a claim for defamation. Rumble pleads that: Defendants published their statements with hostility toward Rumble[14]; Defendants pursued a preconceived narrative; Defendants ignored obvious sources of readily available information; Defendants were motivated by financial gain; Defendants refused to retract their statements after Rumble informed them that their statements were false and demanded retraction; and Defendants failed to adhere to basic journalistic standards. (Am. Compl. ¶¶ 93, 103.) Rumble also alleges collusion between Defendants, Media Matters, and Dewey Square Group, which supports a

---

[14] Under Florida law, if a statement is defamatory per se, common-law malice (i.e., hostility or ill will) is presumed. *Wolfson*, 273 So. 2d at 777.

finding of actual malice. *See Ray v. Edwards*, 725 F.2d 655, 660 (11th Cir. 1984) (actual malice where defendant "conspire[ed] with others to disseminate information…to injure [plaintiff]"). And it alleges that Defendants not only knew that their statements would harm Rumble, but that they specifically intended for their statements to do so. (*E.g.*, Am. Compl. ¶ 7); *see Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 170 (1967) (Warren, C.J., concurring) (Defendant's "full knowledge of the harm that would likely result from publication" was evidence of actual malice.).

Defendants analyze each piece of circumstantial evidence in isolation and conclude that each piece is insufficient on its own. (Mot. at 20–24.) But Defendants do not consider the evidence in the aggregate, as this Court must. Viewed in cumulation and with appropriate inferences, the Amended Complaint easily pleads actual malice. *See, e.g.*, *Eramo v. Rolling Stone,* 209 F. Supp. 3d 862, 872 (W.D. Va. 2016) ("Although failure to adequately investigate, a departure from journalistic standards, or ill will or intent to injure will not singularly provide evidence of actual malice, the court believes that ***proof of all three is sufficient***." (emphasis added)).

## II.     The Amended Complaint Plausibly Alleges Defamation by Implication.

Defendants argue that Rumble's claim for defamation by implication should be dismissed because Rumble does not identify any true facts giving rise to the defamatory implication. But the Eleventh Circuit has described defamation by implication as "a juxtaposition of a series of facts" (not necessarily true facts), "so

19

as to imply a defamatory connection between them." *Klayman v. City Pages*, 650 F. App'x 744, 749 (11th Cir. 2016). Florida state courts and district courts in this Circuit have declined to dismiss implication claims based on false statements of fact. *See Boyles v. Mid-Fla. Television Corp.*, 431 So. 2d 627, 634 (Fla. 5th DCA 1983) (*cited with approval by Jews for Jesus*, 997 So. 2d at 1107); *Deligdish v. Bender*, 2023 WL 5016547, at *6 (M.D. Fla. Aug. 7, 2023) (statements falsely "attribut[ing] facts…to Plaintiff" supported implication claim); *Akai Custom Guns, LLC v. KKM Precision, Inc.*, 2023 WL 8449374, at *13 (S.D. Fla. Dec. 6, 2023).[15]

## CONCLUSION

The Court should deny Defendants' Motion to Dismiss.

Dated: July 1, 2024

/s/ *Jered T. Ede*
Jered T. Ede (FBN: 1045898)
Elizabeth M. Locke (*pro hac vice*)
Nicholas J. Brechbill (*pro hac vice*)
CLARE LOCKE LLP
10 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
Email: jered@clarelocke.com
Email: libby@clarelocke.com
Email: nick@clarelocke.com

*Attorneys for Plaintiff Rumble Inc.*

---

[15] If the Court disagrees with Rumble's position on its implication claim, Rumble respectfully requests that the Court construe—or grant Rumble leave to amend to replead—the claim as one for defamation per quod, which is "injurious…as a consequence of extrinsic facts, such as innuendo." *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1342 (M.D. Fla. 2003). Defendants concede that readers aware of Rumble's statements that it earns little to no revenue from Google Ads would understand Defendants' statements to mean that Rumble was lying to investors.