UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| RUMBLE, INC., | |
| Plaintiff, | Case No. 8:23-CV-02718-CEH |
| v. | **REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |
| NANDINI JAMMI, CLAIRE ATKIN, AND JOHN DOE NOS. 1-10, | |
| Defendants. | |

Defendants' moving brief (Dkt. 44, "Mot.") identifies multiple fatal deficiencies in the Amended Complaint that Rumble's opposition (Dkt. 58, "Opp.") fails to rebut. *First*, Statements accusing Rumble of relying on legitimate revenue streams from Google Ads are not defamatory because they do not impute wrongdoing to Rumble. The cases Rumble cites in response are inapposite because, unlike here, they involved defamatory accusations of fraud or delinquency on debts. *Second*, Rumble all but ignores Defendants' argument that the Statements are not defamatory *per se* because they do not impute misconduct and Rumble fails to establish special damages. *Third*, Rumble precludes actual malice by asserting that the last affirmative statement it made about Google's share of its revenue before Defendants published the Statements was that Google provided up to 20% – which confirmed Defendants' belief that Rumble was materially reliant on Google.[1]  *Finally*, Rumble fails to plead the "true facts" needed to establish defamation by implication and cannot sidestep this fatal deficiency.

---

[1] Defendants acknowledge for the purpose of this Motion that Rumble derived 9% of its revenue from Rumble in Q3 of 2022.  Any assertions by Defendants that Google's share was 19% was based on an inadvertent misreading of the 10-Q Form and Defendants withdraw that claim accordingly.  But this does not change the outcome of any arguments for dismissal – including actual malice. *See* n.13, *infra*.

1

Thus, the Court should dismiss the Amended Complaint with prejudice.[2]

## ARGUMENT

### I.   THE STATEMENTS ARE NOT DEFAMATORY

Defendants argued in their opening brief that the Statements are not capable of being considered defamatory because "it is not defamatory to report that an online business is 'largely dependent on Big Tech (*i.e.*, Google Ads).'" Mot. 8-14 (quoting Am.Compl. ¶86). In response, Rumble suggests that it is defamatory to publish *any* negative factual statement about its business – including statements diminishing its "brand" or identifying a "material risk that no longer exists." Opp. 4-8. Rumble is wrong. Rumble ignores the authority Defendants cited in their moving papers holding that publications about matters "inherent" to the conduct of business are not defamatory unless they "impute wrongdoing." Mot. 8-9 (quoting *Bongino v. Daily Beast*, 477 F. Supp. 3d 1310, 1315-18 (S.D. Fla. 2020) (dismissing libel claim because "the mere statement that someone has been terminated from employment is not in and of itself defamatory *unless the publication contains an insinuation for some misconduct*") (emphasis added)). *See also Mercola v. New York Times Co.*, 2024 U.S. Dist. LEXIS 23808, at *12 (M.D. Fla. Feb. 12, 2024) (report that doctor "failed to identify" support for his academic work was "simply not defamatory"); *Markle v. Markle*, 2024 U.S. Dist. LEXIS 42887, at *37 (M.D. Fla. Mar. 12, 2024) (dismissing claims based on

---

[2] Dismissal with prejudice is appropriate because Rumble has already amended its pleadings once and additional amendments to cure incurable defects, like lack of defamatory meaning, would be futile. *See Markle*, 2024 U.S. Dist. LEXIS 42887, at *66-68.

statements that were not "capable of being considered defamatory"). Under the correct standard, it is not defamatory to state that Rumble relied heavily on a legitimate advertising platform and Rumble's strained interpretations of the Statements do not change this conclusion.

*First*, Rumble concedes that it is not defamatory to accuse an online business of relying on Google Ads but argues that the same accusation defames Rumble because it "has built its brand … through its commitment to achieving independence from Big Tech." Opp. 5-7. But Rumble cannot plausibly claim that the Statements harmed its anti-Big Tech reputation after conceding that it was (a) almost entirely reliant on Google until recently and (b) remains a Google Ads partner to this day. Am.Compl. ¶¶ 15-16. Rumble also fails to cite a single case holding that a statement is defamatory simply because it "diminished" a company's "brand." The case Rumble uses to argue this point, *Diplomatic Elec., Inc. v. Westinghouse Elec. Supply Co.*, 378 F.2d 377 (5th Cir. 1967), does not support such a broad concept of defamatory meaning or even mention brands. Instead, consistent with the wrongdoing standard, *Diplomatic Electric* held that it is defamatory to state that a company was "delinquent in paying its bills." *Id*. at 385.[3]

Rumble also fails to satisfy the "wrongdoing" standard when it asserts, for the first time in its opposition, that the Statements cast Rumble "as dishonest and hypocritical for disregarding its core tenets." Opp. 5. The Amended Complaint does

---

[3] The fact that *Diplomat Electrical* involved an express accusation of wrongdoing also undermines Rumble's misleading suggestion that there is "no general rule" for defamation and that any negative statement about a business can be defamatory. Opp. 6 (quoting *Diplomat Elec.*, 378 F.2d at 381).

3

not allege defamation based on "hypocrisy" and Rumble cannot amend its pleadings via opposition brief.[4] And none of the Statements actually accuse Rumble of hypocrisy or dishonesty. At most, the Statements accuse Defendants of "posturing" or "boast[ing] about being free from Big Tech." Am.Compl. ¶ 84. But Rumble provides no authority for its argument that it can be defamed by Statements merely pointing out inconsistencies between Rumble's funding and its public relations brand. And, once again, it is implausible for Rumble to claim that reliance on Big Tech harms its brand given that it remains a Google Ads partner and was recently 86% reliant on Google.

Furthermore, Rumble cites inapposite cases for its argument that any suggestion of hypocrisy is defamatory *per se*. Opp. 6. Those decisions all involved individual plaintiffs. But a treatise cited by Rumble makes clear that "a corporation has no reputation in the sense that an individual has, and thus may not recover in an action for defamation for an injury to a corporation's personal reputation." 50 Am. Jur. 2d Libel & Slander § 328. Hypocrisy is a deeply personal concept rooted in an individual's failure to conform to his or her own moral standards; it is not a concept that applies to a public corporation comprised of many individuals striving to maximize shareholder value.[5] Rumble's hypocrisy cases are also distinguishable because they involve accusations of impropriety that are not present here. The 135-

---

[4] The only mention of the word in the Amended Complaint is the baseless claim that Defendants "engaged in their own hypocritical disinformation campaign" against Rumble. Am.Compl. ¶ 1.

[5] Even if corporations can be "hypocritical," none of the Statements actually accuse it of hypocrisy by falsely stating, for instance, that Rumble pledged never to take money from Google Ads. Indeed, the Statements are consistent with Rumble's own position that it was justified in taking money from Google while building out its own advertising platform.

4

year-old decision in *Jones v. Greely*, 25 Fla. 629, 638 (Fla. 1889), for instance, involved a plaintiff accused of "inflict[ing] untold sorrow upon … widow[s] and orphan[s] despite "pretending to be a philanthropist."[6]

*Second*, Rumble asserts that it was defamatory to accuse it "of being subject to a material financial risk that no longer exists" (Opp. 7) but Rumble ignores Defendants' argument explaining why that is not the case – *i.e.*, reliance on commercial partners who might withdraw their services is a risk inherent to all businesses and not defamatory without some indication of wrongdoing. Mot. 11. Rather than address this argument, Rumble cherry-picks from inapposite cases and asserts, misleadingly, that any Statement "impugn[ing] the 'health and stability' of a company" is actionable. Opp. 7 (citing *Visant Corp. v. Barrett*, 2013 U.S. Dist. LEXIS 95696, at *7 (S.D. Cal. July 9, 2013)). But none of the cases cited by Rumble remotely suggests that it is defamatory to state that a particular commercial partnership poses financial risks. Those cases involve defamatory accusations that the plaintiffs broke the law, engaged in unethical business practices, or defaulted on debts – which is clearly not the same as reporting that Rumble relies on the money it makes from Google Ads.[7]

---

[6] *See also Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 189 (2d Cir. 2000) (defendant accused a radio host of being untrustworthy because he used his radio show to threaten an advertiser and made false statements about her failure to pay debts); *Newby v. Times-Mirror Co.*, 160 P. 233, 226 (Cal. 1916) (defendant accused plaintiff, a lawyer, of illegally altering public records).

[7] *See Myerson v. Hurlbut*, 98 F.2d 232, 233-34 (D.C. Cir. 1938) (defendant accused plaintiff of being "guilty of fraudulent, unfair and unethical trade practices"); *Visant*, 2013 U.S. Dist. LEXIS 95696, at *16 (defendant accused company of being "already in default" on debt); *Kilgore Ace Hardware, Inc. v. Newsome*, 352 So. 2d 918, 920 (Fla. 2d DCA 1977) (defendants "uttered false and malicious statements concerning the business reputation, competence, and ability" of plaintiffs); *Blythe v. Fifth Third Bank*,

Rumble also cannot conjure defamatory meaning by interpreting the Statements as "calling Rumble's financial soundness into question." Opp. 8. It is not defamatory to state that Rumble "would not be viable" without Google Ads because that is not an accusation of wrongdoing or insolvency. The hypothetical viability of Rumble without Google Ads is also a non-actionable opinion because it is "not verifiable or subject to empirical proof." *Markle v. Markle*, 2023 U.S. Dist. LEXIS 55418, at *23 (M.D. Fla. Mar. 30, 2023). This is especially true of the Statement that Rumble "is a house of cards" – which is clear rhetorical hyperbole that, according to Rumble's own definition, conveys the "danger of collapse" but not an actual default. Opp. 11.[8]

*Finally*, Rumble resorts to inventing a defamatory meaning and grafting it onto the Statements – *i.e.*, that "Rumble defrauded investors by under-reporting or failing to report a material source of revenue in its SEC filings." Opp. 8. This argument fails because none of the Statements state or even suggest that Rumble engaged in fraud. If Defendants were really accusing Rumble of fraud, the Statements "would have just said so. [They] did not. And reading that meaning into the [Statements] would be unreasonable." *Mercola*, 2024 U.S. Dist. LEXIS 23808, at *12. In sum, the Statements are not defamatory, and this action should be dismissed accordingly.

---

2010 U.S. Dist. LEXIS 146830, at *10-11 (M.D. Fla. Jan. 19, 2010) (defendant falsely accused plaintiff of debt delinquency); *Diplomat Elec.*, 378 F.2d at 381 (same).

[8] Rumble's "house of cards" cases should be disregarded because, unlike here, that phrase was used in connection with claims the plaintiffs engaged in illegal or unethical conduct, like running Ponzi schemes. *See, e.g.*, *Bass v. United Dev. Funding, L.P.*, 2019 Texas App. LEXIS 7421, at *9 (Tex. App. Aug. 21, 2019) (defendant described company as "house of cards that had been built up through a massive Ponzi scheme"); *Solomon Found. v. Christian Fin. Res. Inc.*, 2023 U.S. Dist. LEXIS 71833, at *4 (D. Md. Apr. 24, 2023) (defendant accused plaintiff of "operating a criminal Ponzi scheme").

## II.     RUMBLE HAS NOT PLED DEFAMATION *PER SE* OR SPECIAL DAMAGES

Remarkably, Rumble all but ignores Defendants' argument that the Statements are not defamatory *per se* because, to be defamatory *per se*, a statement about a business "must impute fraud, want of integrity, or actual misconduct." *San Juan Prods. v. River Pools & Spas, Inc.*, 2023 U.S. Dist. LEXIS 25030, at *23 (M.D. Fla. Feb. 14, 2023).[9] The Statements do not convey these meanings – nor does Rumble seriously argue that they do – which is dispositive on the issue of *per se* defamation.  *See* Mot. 15-16.

Rumble does engage with Defendants' ancillary argument that the Statements are not defamatory *per se* because they require reference to extrinsic facts.  Opp. 10-11. But Rumble badly misses the mark because its own convoluted explanation of how the Statements can be understood as an accusation of fraud is "replete with references to extrinsic evidence."  *Flynn v. CNN, Inc.*, 2023 U.S. Dist. LEXIS 165234, at *15 (M.D. Fla. Mar. 17, 2023.  *See* Opp. 9 (explaining defamatory meaning by reference to extrinsic social media posts).

Having failed to establish defamation *per se*, Rumble also fails to salvage its deficient allegations of special damages.  Rumble ignores the cases cited by Defendants that require special damages to be pled with specificity pursuant to Rule 9(g).  Mot. 15 (quoting *Flynn v. CNN, Inc.*, 2023 U.S. Dist. LEXIS 165234, at *12 (M.D. Fla. Mar. 17, 2023)).  Moving the goal posts, Rumble argues that generic allegations of "lost ad

---

[9] In this context, "want of integrity" refers to unethical dealing or insolvency.  *See, e.g.*, *Seaboard Warehouse Terminals, Inc. v. Dun & Bradstreet, Inc.*, 328 F. Supp. 291, 292 (S.D. Fla. 1971), *aff'd*, 458 F.2d 160 (5th Cir. 1972) (holding that a publication might be defamatory *per se* if it states that "the plaintiff is insolvent, that it lacks credit, or that it is experiencing pecuniary difficulties").

7

revenue" will suffice. Opp. 12-13 (citing *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1344-45 (M.D. Fla. 2003); *ThermoLife Int'l, LLC, v. Vital Pharmaceuticals*, 2020 U.S. Dist. LEXIS 14009, at *2 (S.D. Fla. Jan. 24, 2020)). But multiple courts have rejected Rumble's outlier district court cases.[10] The Court should follow the better and more established rule that, "pursuant to Rule 9(g), a party must 'specifically state[]' special damages." *First Ins. Funding*, 2022 U.S. Dist. LEXIS 222485, at *8. To hold otherwise would collapse defamation *per se* and *per quod* by allowing Rumble to plead special damages based on speculative claims about "putative" lost revenue rather than the actual and specific losses required. Opp. 12.

Rumble's other special damages arguments also fail. Rumble does not dispute that its generic allegations of lost advertisers are not special damages under Rule 9. Opp. 12. And Rumble's argument that the Statements "caused Rumble's stock price to drop" fails to address the authority squarely rejecting special damages claims based on allegations that the plaintiff's "stock declined in value." Mot. 19 (quoting *Salit v. Rudin, McClosky, Smith, Shuster and Russell, P.A.*, 742 So. 2d 381, 388 (Fla. 4th DCA 1999)).[11] Rumble's assertion that it can establish special damages through fees

---

[10] *First Ins. Funding v. Stonemark, Inc.*, 2022 U.S. Dist. LEXIS 222485, at *7-8 (M.D. Fla. Dec. 9, 2022) (rejecting *Leavitt* standard); *Nat'l Numismatic Certification, LLC v. eBay, Inc.*, 2008 U.S. Dist. LEXIS 109793, at *61-62 (M.D. Fla. July 8, 2008) (same); *McGowan v. Homeward Residential, Inc.*, 500 Fed. Appx. 882, 886 (11th Cir. 2012) (affirming dismissal because libel plaintiff "has not specifically stated special damages as required by Rule 9(g)").

[11] The Court should disregard Rumble's sole case on this point because it involved the defamatory *per se* statement that the plaintiff was "member of … a terrorist organization" and does not even mention special damages. Opp. 13 (quoting *Sirer v. Aksoy*, 2021 U.S. Dist. LEXIS 204653, at *8-9 (S.D. Fla. Oct. 22, 2021)). Rumble also neglects to mention that the subsequent decision in *Sirer* (cited at Opp. n. 9) held that "the mere decline in the value of an asset, such as the value of a plaintiff's stock, is not

expended as a preliminary step towards filing this lawsuit fails under the very case it cites, which holds that there is a "general bar against recovery of legal fees" incurred by a plaintiff in prosecuting the libel claims in suit. *Robertson v. Dow*, 2010 U.S. Dist. LEXIS 151305, at *13 (S.D.N.Y. May 11, 2010). Only "fees associated with separate litigation may be recoverable as special damages" and Rumble has failed to identify a separate litigation for which it paid lawyers or public relations consultants. *Id*.[12] Rumble has therefore not plead special damages.

### III. RUMBLE FAILED TO PLEAD ACTUAL MALICE

*Finally*, Rumble cannot plead actual malice. The main premise of its actual malice argument is that Defendants knew the Statements were false because Rumble told Jammi in late 2022 that "Google Ads accounted for less than 20% of Rumble's overall revenue." Opp. 16. But this statement suggesting that Google was still responsible for up to 19.9% of Rumble's revenue does not disprove the gist of the Statements, which is that Rumble was heavily reliant on Google. To the contrary, it confirms Defendants' belief that Google contributed a material portion of Rumble's income.[13] Rumble nevertheless argues that Defendants should have known that

---

a *realized* pecuniary loss that can support a special damages award." *Sirer v. Aksoy*, 2023 WL 3166453, at *25 (S.D. Fla. May 1, 2023) (citing *Salit*, 742 So. 2d at 388).

[12] Rumble relies heavily upon slander of title cases that are readily distinguishable because, in those cases, legal fees spent on clearing the title to the affected real estate were separate and apart from the defamation litigation. Opp. 14.

[13] This belief is consistent with Rumble's own Q3 2022 10-Q form, which confirms that the loss of 19% of its of revenue "could materially harm its results of operations." Dkt. 45-9. While Defendants acknowledge that the 10-Q form states that 19% of Rumble's revenue derived from Google plus Decide, Rumble does not differentiate between the two and a reader could reasonably conclude that

9

Google provided an immaterial share of Rumble's revenue by the time the Statements were published. But it does not identify any subsequent statement to Defendants directly asserting that it was no longer reliant on Google. The third-party article and other ambiguous materials Rumble cites as evidence of actual malice do not supersede its final representation to Defendants about how much it relied on Google. Nor were Defendants required to investigate or second guess that representation. *See, e.g.*, *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Rumble's back-up cumulation argument also fails because aggregated allegations of bad intent and unreasonableness do not suffice where Defendants fairly relied on Rumble's own words. *See* Mot. 24.[14]

## **CONCLUSION**

Defendants respectfully request that this Court dismiss the Amended Complaint with prejudice and award such other relief the Court deems just and proper.

| SHULLMAN FUGATE PLLC | DAVIS WRIGHT TREMAINE LLP |
|---|---|
| By: */s/ Sarah M. Papadelias*<br>Deanna K. Shullman (FBN 514462)<br>Sarah M. Papadelias (FBN 0125098)<br>2101 Vista Parkway, Ste. 4006<br>West Palm Beach, Florida 33411<br>Telephone: (561) 429-3619<br>dshullman@shullmanfugate.com<br>spapadelias@shullmanfugate.com | John M. Browning (*pro hac vice*)<br>Katherine M. Bolger (*pro hac vice*)<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 489-8230<br>jackbrowning@dwt.com<br>katebolger@dwt.com |

---

Google was responsible for the vast majority of the total. The fact that Google was disclosed at all also supports the conclusion that it provided a material source of income.

[14] Rumble's defamation by implication claim also fails. Rumble admits that it did not plead true statements that can serve as the basis for this claim, which requires dismissal. *See Markle*, 2024 U.S. Dist. LEXIS 42887, at *62-65. The cases Rumble cite do not specifically address whether defamation by implication claims can ever be based on false facts and do not overrule the clear authority holding that they cannot. Opp. 20. The Court should not permit repleading of this claim as defamation *per quod* because it would duplicate the non-actionable defamation claims Rumble has already pled.

10

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2024, a true and correct copy of the foregoing was served via CM/ECF on all counsel of record.

*/s/ Sarah M. Papadelias*
Sarah M. Papadelias
