# Exhibit A

As filed with the U.S. Securities and Exchange Commission on February 14, 2022

Registration No. 333-

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM S-4
REGISTRATION STATEMENT
UNDER
THE SECURITIES ACT OF 1933

# CF ACQUISITION CORP. VI

(Exact name of registrant as specified in its charter)

| Delaware | 6770 | 85-1030340 |
|---|---|---|
| (State or Other Jurisdiction of Incorporation or Organization) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification No.) |

110 East 59th Street
New York, NY 10022
(212) 938-5000

(Address, including zip code, and telephone number, including area code, of registrant's principal executive offices)

Howard W. Lutnick
Chief Executive Officer
CF Acquisition Corp. VI
110 East 59th Street
New York, NY 10022
(212) 938-5000

(Name, address, including zip code, and telephone number, including area code, of agent for service)

*Copies to:*

| Ken Lefkowitz, Esq. | Gordon Cameron | Noam Goodman | Russell L. Leaf, Esq. |
| Gary J. Simon, Esq. | Matthew Hunt | Russell Drew | Sean M. Ewen, Esq. |
| Michael Traube, Esq. | Bennett Jones LLP | DLA Piper (Canada) LLP | Willkie Farr & |
| Javad Husain, Esq. | 3400 One First | 100 King St W Suite 6000 | Gallagher LLP |
| Hughes Hubbard & Reed LLP | Canadian Place P.O. Box 130 | Toronto, Ontario M5X 1E2 (416) 365-3500 | 787 Seventh Avenue New York, NY 10019-6099 |
| One Battery Park Plaza New York, NY 10004 (212) 837-6000 | Toronto, Ontario M5X 1A4 (416) 863-1200 | | (212) 728-8000 |

Approximate date of commencement of proposed sale to the public: As soon as practicable after this Registration Statement becomes effective and after all conditions under the Business Combination Agreement to consummate the proposed business combination are satisfied or waived.

If the securities being registered on this Form are being offered in connection with the formation of a holding company and there is compliance with General Instruction G, check the following box: ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering: ☐

- *Rumble's IT Infrastructure.* Historically, Rumble has invested comparatively less capital in its business infrastructure as compared to its competitors and accordingly, its IT infrastructure is likely less developed than that of its competitors. As Rumble increases its footprint in the marketplace, it may become subject to increased cyber-attacks and other difficulties, which could materially impact its financial performance. Rumble will need to make substantial investments into its IT infrastructure to, among other things, better protect itself from potential cyber-attacks such as malware, viruses, ransomware attacks, denial of service attacks, phishing schemes, and other attempts to harm it or its systems.

- *Potential Losses Due to Rumble Content.* Rumble maintains a content neutral platform. Subject to its terms of service, Rumble does not refuse or remove content on the basis of viewpoint. This neutrality may lead to users uploading content that predominantly represents certain political viewpoints, thereby leading to an inaccurate public perception that Rumble endorses those viewpoints. Therefore, Rumble may face litigation or its business and operations may otherwise be adversely impacted.

- *Risks Related to Use of "Open Source" Software.* Rumble relies on "open source" software. The use and distribution of open source software may entail greater risk than the use of third-party commercial software as open source licensors generally do not provide protections regarding infringement claims or the quality of the code. To the extent that Rumble depends upon the successful operation of the open source software it uses, any undetected errors or defects in this open source software could impair Rumble's functionality, delay new solution introductions, result in a failure of its platform, and injure its reputation. For example, undetected errors or defects in open source software could render Rumble vulnerable to breaches or security attacks, and, in conjunction, make its systems more vulnerable to data breaches. Furthermore, some open source licenses contain requirements that Rumble make available source code for modifications or derivative works Rumble creates based upon the type of open source software Rumble uses. If Rumble combines its proprietary software with open source software in a specific manner, it could, under some open source licenses, be required to release the source code of its proprietary software to the public. This would allow Rumble competitors to create similar solutions with lower development effort.

- *Rumble's Data Privacy.* Rumble will need to significantly expand its IT and compliance resources to ensure compliance with all IT and data privacy laws. A failure to be in compliance with all IT and data privacy laws could subject it to large potential fines and other litigation.

- *Rumble's Relationship with Cosmic.* Cosmic provides content editing and moderation services to Rumble and is owned and controlled by Rumble's founder and CEO, Christopher Pavlovski, and Ryan Milnes, who owns a significant number of Rumble Shares. As a result, the terms on which Cosmic provides such services to Rumble may not be equivalent to the terms on which a third-party would provide such services, or such services may not be provided by Cosmic in a manner equivalent to the manner in which a third-party would provide such services. In addition, given Rumble's significant reliance on Cosmic to provide content moderation services, if Cosmic is not properly moderating content posted to Rumble, Rumble could be exposed to additional liability as described in "*Potential Losses Due to Rumble's Content*" above.

- *Patent and Other IP Risks.* Rumble could be subject to litigation from patent holders alleging that its platform violates their patents and could be required to recreate its platform or open up its software to public use, all at substantial cost and delay.

- *Management Team.* Rumble's executives operate in different countries, and different jurisdictions within those countries, each with different legal frameworks, which different legal frameworks may or may not be in the best interest of Rumble and which may impact the enforceability of restrictive covenants.

- *Readiness to be a Public Company.* As Rumble has not previously been a public company and its senior executives have not previously been senior executives of a public company, Rumble

may not have all the different types of employees necessary for it to timely and accurately prepare financial statements and reports for filing with the SEC. Rumble will be required to significantly expand its financial operations and there is a risk that Rumble will not be able to hire the right people to fill in these gaps by

32

Rumble00000071