# EXHIBIT J

As filed with the U.S. Securities and Exchange Commission on May 12, 2022

Registration No. 333-262725

---

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

---

AMENDMENT NO. 1 TO
FORM S-4
REGISTRATION STATEMENT
UNDER
THE SECURITIES ACT OF 1933

---

# CF ACQUISITION CORP. VI

(Exact name of registrant as specified in its charter)

---

| Delaware | 6770 | 85-1030340 |
|---|---|---|
| (State or Other Jurisdiction of Incorporation or Organization) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification No.) |

110 East 59th Street
New York, NY 10022
(212) 938-5000

(Address, including zip code, and telephone number, including area code, of registrant's principal executive offices)

Howard W. Lutnick
Chief Executive Officer
CF Acquisition Corp. VI
110 East 59th Street
New York, NY 10022
(212) 938-5000

(Name, address, including zip code, and telephone number, including area code, of agent for service)

*Copies to:*

| Ken Lefkowitz, Esq. Gary J. Simon, Esq. Michael Traube, Esq. Javad Husain, Esq. Hughes Hubbard & Reed LLP One Battery Park Plaza New York, NY 10004 (212) 837-6000 | Gordon Cameron Matthew Hunt Bennett Jones LLP 3400 One First Canadian Place P.O. Box 130 Toronto, Ontario M5X 1A4 (416) 863-1200 | Noam Goodman Russell Drew DLA Piper (Canada) LLP 100 King St W Suite 6000 Toronto, Ontario M5X 1E2 (416) 365-3500 | Russell L. Leaf, Esq. Sean M. Ewen, Esq. Willkie Farr & Gallagher LLP 787 Seventh Avenue New York, NY 10019-6099 (212) 728-8000 |

Approximate date of commencement of proposed sale to the public: As soon as practicable after this Registration Statement becomes effective and after all conditions under the Business Combination Agreement to consummate the proposed business combination are satisfied or waived.

If the securities being registered on this Form are being offered in connection with the formation of a holding company and there is compliance with General Instruction G, check the following box: ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering: ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering: ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company and emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company" and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| Large accelerated filer | ☐ | Accelerated filer | ☐ |
|---|---|---|---|
| Non-accelerated filer | X | Smaller reporting company | X |
| Emerging growth company | X | | |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 7(a)(2)(B) of the Securities Act. ☐

If applicable, place an X in the box to designate the appropriate rule provision relied upon in conducting this transaction:

| Exchange Act Rule 13e-4(i) (Cross-Border Issuer Tender Offer) | ☐ | Exchange Act Rule 14d-1(d) (Cross-Border Third-Party Tender Offer) | ☐ |
|---|---|---|---|

The Registrant hereby amends this Registration Statement on such date or dates as may be necessary to delay its effective date until the Registrant shall file a further amendment which specifically states that this Registration Statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act of 1933, as amended, or until the Registration Statement shall become effective on such date as the SEC, acting pursuant to Section 8(a), may determine.

Table of Contents

The information in this preliminary proxy statement/prospectus is not complete and may be changed. CF Acquisition Corp. VI may not sell these securities until the registration statement filed with the Securities and Exchange Commission is effective. This preliminary proxy statement/prospectus is not an offer to sell these securities and it is not soliciting an offer to buy these securities in any state where the offer or sale is not permitted.

**PRELIMINARY PROXY STATEMENT/PROSPECTUS DATED MAY 12, 2022,
SUBJECT TO COMPLETION**

# CF Acquisition Corp. VI

To the Stockholders of CF Acquisition Corp. VI:

You are cordially invited to attend the Special Meeting of Stockholders (the "**Special Meeting**") of CF Acquisition Corp. VI, which is referred to as "**CF VI**," on          ,          , 2022, at          , Eastern Time. The meeting will be held virtually over the Internet by means of a live audio webcast. You will be able to attend, vote your shares and submit questions during the Special Meeting via a live webcast available at          . At the Special Meeting, the stockholders of CF VI will be asked to consider and vote upon the following proposals (the "**Proposals**"):

(1) to adopt and approve the Business Combination Agreement dated December 1, 2021 (as the terms and conditions therein may be amended, modified or waived from time to time, the "**Business Combination Agreement**"), by and between CF VI and Rumble Inc., a corporation formed under the laws of the Province of Ontario, Canada ("**Rumble**"), and to approve the transactions contemplated thereby, including an arrangement under Section 182 of the *Business Corporations Act* (Ontario) on the terms and subject to the conditions set forth in a plan of arrangement ("the "**Plan of Arrangement**"), to be submitted to the Ontario Superior Court of Justice (Commercial List) (such transactions, collectively, the "**Business Combination**");

(2) to consider and vote upon a proposal to elect          directors to serve on the board of directors of CF VI following the Business Combination (such entity, the "**Combined Entity**"), to serve until the next annual meeting of stockholders following the date of this proxy statement/prospectus and until their respective successors are duly elected and qualified;

(3) to approve separate proposals, for purposes of complying with The Nasdaq Stock Market Listing Rule 5635, the issuance of (i) up to 63,245,836 shares of Class A Common Stock, 168,956,526 shares of Class C Common Stock and 106,428,676 shares of Class D Common Stock, in each case pursuant to the Business Combination Agreement, and up to an additional 168,956,526 shares of Class A Common Stock issuable upon conversion of ExchangeCo Exchangeable Shares issued pursuant to the Business Combination Agreement, and (ii) up to 8,500,000 shares of Class A Common Stock pursuant to the PIPE Investment;

(4) to approve the Stock Incentive Plan of the Combined Entity (the "**Stock Incentive Plan**") in connection with the Business Combination;

(5) to approve separate proposals to amend and restate CF VI's current amended and restated certificate of incorporation (the "**CF VI Charter**") to adopt certain material differences that will be in effect upon consummation of the Business Combination; and

(6) to approve a proposal to adjourn the Special Meeting to a later date or dates, if it is determined by CF VI that additional time is necessary or appropriate to complete the Business Combination or for any other reason.

The Board of Directors of CF VI (the "**CF VI Board**") has fixed the close of business on          , 2022 as the record date for the Special Meeting (the "**Record Date**") for the determination of stockholders entitled to notice of, and to vote at, the Special Meeting or any postponement or adjournment thereof. Stockholders should carefully read the accompanying Notice of Special Meeting and proxy statement/prospectus for a more complete statement of the Proposals to be considered at the Special Meeting.

**The CF VI Board has unanimously approved and adopted the Business Combination Agreement and unanimously recommends that our stockholders vote "FOR" each of the Proposals presented to CF VI Stockholders. When you consider the CF VI Board's recommendation of these proposals, you should keep in mind that the directors and officers of CF VI have interests in the Business Combination that may conflict with your interests as a stockholder. See the section titled "***The Business Combination Proposal — Interests of the Sponsor and CF VI's Officers and Directors in the Business Combination***" in the accompanying proxy statement/prospectus.**

- our ad targeting capabilities, and those of our competitors;

- our ability, and the ability of our competitors, to adapt our respective models to the increasing power and significance of influencers to the advertising community;

- the timing and market acceptance of our advertising content and advertising products, and those of our competitors;

- our marketing and selling efforts, and those of our competitors;

- public perceptions about the predominance of certain political viewpoints on our platform, regardless of whether those perceptions are accurate;

- the pricing for our advertising products and services relative to those of our competitors;

- the return our advertisers receive from our advertising products and services, and those of our competitors; and

- our reputation and the strength of our brand relative to our competitors.

***Changes to Rumble's existing content and services could fail to attract traffic and advertisers or fail to generate revenue.***

We may introduce significant changes to our existing content. The success of our new content depends substantially on consumer tastes and preferences that change in often unpredictable ways. If this new content fails to engage traffic and advertisers, we may fail to generate sufficient revenue or operating profit to justify our investments, and our business and operating results could be adversely affected. In addition, we have launched and expect to continue to launch strategic initiatives, which do not directly generate revenue but which we believe will enhance our attractiveness to traffic and advertisers. In the future, we may invest in new content, products, services, and initiatives to generate revenue, but there is no guarantee these approaches will be successful or that the costs associated with these efforts will not exceed the revenue generated. If our strategic initiatives do not enhance our ability to monetize our existing content or enable us to develop new approaches to monetization, we may not be able to maintain or grow our revenue or recover any associated development costs and our operating results could be adversely affected.

***Rumble derives a substantial portion of its revenue from advertising and its relationships with a small number of key advertising networks, the loss of which could materially harm its results of operations.***

A substantial portion of Rumble's revenue is generated from a small number of key advertising networks. For the nine months ended September 30, 2021, approximately 86% of Rumble's total revenue derived from a single advertising network, Google AdSense. As a user of Google AdSense, Rumble is subject to Google's standard terms and conditions under the Google AdSense Online Terms of Service, a copy of which is filed as an exhibit to this Registration Statement on Form S-4 of which this proxy statement/prospectus forms a part, which provide for (i) the creation by Rumble of an AdSense Account; (ii) a grant of permission by Rumble to Google to serve, as applicable, advertisements and other content, Google search boxes and search results and related search queries and other links to Rumble's website; and (iii) the receipt of payment by Rumble, based solely on Google's accounting, related to the number of valid clicks on ads displayed. Google AdSense and other advertising partners may not continue to do business with Rumble, or they may reduce the prices they are willing to pay to advertise with Rumble, if Rumble does not deliver ads in an effective manner, or if they do not believe that their investment in advertising with Rumble will generate a competitive return relative to alternatives. If Rumble's relationship with any third-party advertiser terminates for any reason, or if the commercial terms of its relationships are changed or do not continue to be renewed on favorable terms, Rumble would need to secure and integrate new advertising partners or develop its own advertising platform, which could negatively impact its revenues and profitability.