# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RUMBLE INC.,

                Plaintiff,

     v.

NANDINI JAMMI, CLAIRE ATKIN, and
JOHN DOE NOS. 1–10,

                Defendants.

**Case No. 8:23-cv-02718-CEH-LSG**

## PLAINTIFF'S TIME-SENSITIVE MOTION FOR ADDITIONAL DISCOVERY PURSUANT TO RULE 56(D), TO STRIKE DEFENDANTS' IMPROPER NOTICE OF WITHDRAWAL OF CONSENT, AND TO SET A CASE MANAGEMENT CONFERENCE

Plaintiff Rumble Inc. respectfully moves the Court for an Order pursuant to Federal Rule of Civil Procedure 56(d) denying or deferring Defendants' Motion for Summary Judgment (ECF No. 90) until Rumble has obtained discovery previously agreed to by Defendants relating to facts essential to Rumble's Opposition to Defendants' summary judgment motion.  Rumble also respectfully moves the Court for an Order striking Defendants' improper Notice of Withdrawal of Consent (ECF No. 86) to the Parties' Joint Motion to Modify the Scheduling Order and extend all deadlines in the case (ECF No. 83).  Finally, Rumble requests a Case Management Conference to seek the Court's guidance on how to most efficiently resolve the confusion Defendants' strategic and improper gamesmanship has created.

## MEMORANDUM OF LAW

### TIME-SENSITIVE NATURE OF MOTION

Plaintiff Rumble Inc.'s Motion is time sensitive.  Rumble's Opposition to Defendants' Motion for Summary Judgment is due on or before March 25, 2025, and the outcome of this Motion will affect Rumble's ability to develop facts essential to its Opposition.  Rumble requests a decision on this Motion before the March 25 deadline.  If the Court is unable to consider and decide this Motion by then, Rumble requests a temporary stay of the deadline until 14 days after this Motion is decided.

### INTRODUCTION

The first paragraph of the first page of the Middle District Discovery Handbook directs that discovery "should be practiced with a spirit of cooperation and civility."  Middle District Discovery (2021) at § I.A.  Defendants' conduct flies in the face of this maxim.

In April 2024, Rumble filed an Amended Complaint asserting claims for defamation and defamation by implication.  (ECF No. 42.)  Defendants Nandini Jammi and Claire Atkin moved to dismiss the Amended Complaint in May 2024. (ECF No. 44.)  The Motion to Dismiss was fully briefed and a two-day hearing was held in November 2024.  (ECF Nos. 77, 79.)  During that hearing, the Court indicated that it was likely to dismiss Rumble's defamation by implication claim, take Rumble's defamation claims under advisement, and give Rumble an opportunity to

amend its pleadings with the benefit of the Court's guidance.[1]  (Ex. H at 60:2–17 ("[A]nd so I most likely will ... give plaintiff an opportunity to amend ... with the benefit of an order from the Court having analyzed ... the Complaint ....").)

In light of the Court's statements from the bench at the argument, in November 2024, the Parties mutually agreed to and filed with the Court a Joint Motion to Modify the Scheduling Order to extend all remaining deadlines in the case by six months, including to extend the close of discovery from February 4, 2025 to August 4, 2025.  (ECF No. 83.)  In January 2025, both the Defendants' Motion to Dismiss and the parties' Joint Motion remained pending.  The Parties agreed to continue with discovery beyond the February 4, 2025 deadline because they reasonably anticipated that the Court would grant the Joint Motion, particularly in light of the pending decision on Defendants' Motion to Dismiss.  *United States v. Varner*, 13 F.3d 1503, 1507 (11th Cir. 1994) (noting "presumption that a pretrial order will be amended" as long as there is "no substantial injury or prejudice").

While Rumble assented to these agreements in good faith, Defendants apparently intended them as a trap to try to deprive Rumble the opportunity to amend its complaint with the benefit of the Court's guidance.  The Parties continued to engage in discovery, including producing documents, serving and responding to

---

[1] Defendants' Motion to Dismiss, filed in May 2024, remained pending until last week when Defendants withdrew it without warning.  (ECF No. 100.)

interrogatories, and taking multiple depositions.  In light of the pending Joint Motion to extend deadlines and the then-pending Motion to Dismiss, the Parties also entered into an agreement to take depositions before or as close as possible to the existing discovery deadline but to allow for the depositions to be reopened once the Court's order on the Motion to Dismiss was entered.  Rumble believed it was important to keep discovery open given the uncertainty about the landscape of the case in light of the Court's statement that it would most likely give Rumble an opportunity to amend with the benefit of the Court's ruling on the Motion to Dismiss.  (Ex. H at 60:2–17.) With the Motion to Dismiss pending, Rumble did not know the precise contours of the case or the specific facts it needed to develop, and it would have been prejudicial for Rumble to be foreclosed from further discovery before repleading its claims.

Although discovery was ongoing, with some depositions not yet scheduled, other depositions remaining open, and Defendants' privilege log not yet produced, the Parties filed summary judgment motions on March 4, 2025, in accordance with the deadline in the Scheduling Order.  (ECF No. 37.)  Rumble did so, as its Motion for Partial Summary Judgment makes clear, out of an abundance of caution so as not to waive Rumble's ability to file such a motion.  (ECF No. 87 at 9 n.4.)

Defendants had other intentions.  Indeed, the day before summary judgment motions were due, Defendants notified Rumble for the first time that they intended to withdraw their consent to the Joint Motion to extend deadlines that the Parties

filed in November (which is pending).  Defendants filed a Notice on March 4 purporting to do just that.  (ECF No. 86.)  The next day, they filed another Notice, this time purporting to withdraw their pending Motion to Dismiss.  (ECF No. 100.)

Defendants' Notice of Withdrawal of Consent to the pending Joint Motion made clear the intent behind Defendants' procedural wrangling.  They seek to deprive Rumble of the opportunity to amend its complaint by reneging on discovery agreements the Parties entered into months ago.  (ECF No. 86 at 2 n.1 "Defendants are aware that the Court indicated that it was likely to grant [Rumble] leave to amend ... Defendants now intend to argue [that] ... amendment would be futile.").)[2]

Not only have Defendants engaged in procedural gamesmanship in an attempt to deny Rumble an opportunity the Court said it would likely provide, but they also slow rolled and withheld relevant discovery to gain a strategic advantage before purporting to withdraw their consent to the Joint Motion.  Rumble relied on Defendants' consent—and the Court's acknowledgment that it would most likely give Rumble an opportunity to amend its complaint—in conducting discovery. Defendants' withdrawal of their consent in this way is highly prejudicial to Rumble.

---

[2] The Court has already considered, and rejected, Defendants' argument that the case should be dismissed with prejudice.  Defendants made the same argument in their Motion to Dismiss (at 25), and the Court stated that it would most likely grant Rumble leave to amend regardless (Ex. H at 60:2–17).

Among other things, Defendants withheld relevant and responsive documents based on improper privilege assertions, but they have yet to produce a privilege log—despite numerous requests from Rumble and repeated assurances from Defendants that they would. Defendants' failure to timely produce a privilege log prevented Rumble from challenging Defendants' privilege assertions before the Court during the original discovery period because Defendants never "describe[d] the nature of the documents" withheld in a manner that would enable Rumble and the Court to assess Defendants' privilege claims, as the Federal Rules of Civil Procedure require. Fed. R. Civ. P. 26(b)(5). Rumble has therefore been deprived of facts needed to justify its Opposition to Defendants' Motion for Summary Judgment, and the Court should deny that Motion under Federal Rule of Civil Procedure 56(d).

The Court should also reject Defendants' maneuvering and strike Defendants' Notice of Withdrawal of Consent to the Parties' Joint Motion to Modify the Scheduling Order because such gamesmanship "fl[ies] in the face of fairness," *e.g. Ice Rak LLC v. Rita's Franchise Co., LLC*, 2024 WL 1118810, at *7 (M.D. Fla. Mar. 14, 2024), is barred by the doctrine of equitable estoppel, *id.*, and is prohibited by this District's discovery guidelines, Middle District Discovery at § VIII.A. Defendants' Notice is also procedurally improper. Unfortunately, litigating the

fallout from Defendants' double-dealing is a waste of judicial resources that has forced Rumble to incur unnecessary legal fees.[3]

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Rumble sues Jammi and Atkin for defamation and defamation by implication.

On November 29, 2023, Rumble filed its Complaint asserting claims for defamation and defamation by implication against Jammi and Atkin—the co-founders of the self-described "adtech watchdog" Check My Ads—based on statements they made in posts on X (formerly, Twitter) and in an article they published on CheckMyAds.org between August and October 2023.[4]  (ECF No. 1.)

As more fully explained in Rumble's Motion for Partial Summary Judgment (ECF No. 87), Defendants' defamatory statements falsely claimed that Rumble is "largely" and "heavily monetized" by Google Ads; "heavily dependent on Google Ads"; "90% funded by" Google Ads; and a "house of cards" that "would not be viable" without Google Ads.  (*Id*. at 1, 4–5.)  As Defendants knew, these statements

---

[3] Rumble also asks the Court for appropriate costs for briefing this Motion and opposing Defendants' Motion to Dismiss, which Defendants withdrew at the eleventh hour after oral argument was heard, rendering the time and resources Rumble and the Court dedicated to that Motion wasted.  *See* 19 U.S.C. § 1927; *see also Hebert v. DBNT*, 2022 WL 20637638, at *1–2 (M.D. Fla. Mar. 9, 2022).

[4] Rumble filed an Amended Complaint on April 26, 2024.  (ECF No. 42.)

were (and are) false.  When Defendants made their statements, Rumble only received about 1% of its revenue from Google Ads.  (*Id*. at 6.)

Defendants made these defamatory statements for the express purpose of harming Rumble's business and its brand, which Defendants know is built upon Rumble's commitment to independence from Big Tech.  (*Id*. at 3.)  Defendants sought to portray Rumble as hypocritical and subject to nonexistent financial risks that have it teetering on the verge of collapse in an effort to "demonetize" Rumble by deterring third parties from dealing with it.  (*Id*. at 1.)

**B.    The Court indicates that it will most likely give Rumble leave to amend its complaint if any claims are dismissed.**

On November 7 and 8, 2024, the Court heard oral argument on Defendants' Motion to Dismiss.  (ECF Nos. 77, 79.)  During the course of the two-day hearing, the Court stated that it most likely would give Rumble "an opportunity to also amend one additional time after [it] issue[s] an order on" Defendants' Motion to Dismiss to give Rumble "the benefit of the Court's ruling as the party proceeds to amend."  (Ex. H at 60:2–17.)  The Court also indicated that it was likely to dismiss Rumble's defamation by implication claim, so repleading would be appropriate regardless of how it ruled on Rumble's defamation claims.  (*Id*.)  Defendants' Motion to Dismiss was pending until Defendants unexpectedly withdrew it last week.  (ECF No. 100.)

**C.    The Parties agree that more time is needed for discovery, and they
file a Joint Motion to Modify the Scheduling Order.**

In light of the Court's statement during the hearing that it would most likely
allow Rumble an opportunity to replead its claims, the Parties agreed that more time
would be needed to complete discovery than was allotted in the Court's Scheduling
Order, which set a February 4, 2025 discovery deadline. (ECF No. 37.) As such,
on November 27, 2024—more than two months before the deadline—the Parties
filed a Joint Motion to extend all deadlines by six months. (ECF No. 83.) The
Parties agreed that the "existing schedule cannot be met despite the exercise of
reasonable diligence" because the Parties were "unsure about what effect the Court's
forthcoming order on Defendants' pending motion to dismiss will have on the scope
and timeframe of this action." (*Id*. at 3.) That Joint Motion remains pending. (*Id*.)

**D.    The Parties continue to engage in discovery diligently while the
motions are pending.**

Following the hearing on Defendants' Motion to Dismiss and submission of
the Parties' Joint Motion to Modify the Scheduling Order, the Parties continued to
engage in discovery diligently—and Rumble believed—in good faith. As is now
apparent, Defendants were not operating in good faith, and they intentionally slow
rolled relevant discovery in a calculated effort to deprive Rumble of the opportunity
to amend its complaint "with the benefit of the Court's ruling." (Ex. H at 60:2–17.)

On May 31, 2024, Rumble served its First Sets of Requests for Production on Defendants.  Defendants served their Responses and Objections on July 1, 2024. (Exs. B, C.)   Among other things, Defendants asserted a bevy of purported, boilerplate First Amendment, Fourteenth Amendment, and statutory journalist and reporters' shield privileges under the U.S. Constitution and the laws of three states, without providing any indication which laws they believed should apply.  (*Id*.)  On July 22, 2024, Rumble sent Defendants a letter identifying deficiencies in Defendants' Responses, including that no journalist privilege or reporters' shield laws applied because Defendants are not professional journalists.  (Ex. D.)

Defendants responded on July 31, 2024.  (Ex. F.)  With respect to the privilege objections, Defendants stated: "In any event, any dispute over the sufficiency of Defendants' privilege objections is premature. ***Defendants intend to serve privilege logs identifying the documents they withhold on the basis of privilege ....  If Rumble has objections to particular assertions of privilege, the proper time to raise those objections with the Court is after Defendants have served their privilege log(s).***"  (*Id*. (emphasis added).)  The Parties met and conferred, and Rumble agreed to wait to move to compel on the privilege issues until after receiving Defendants' privilege log.  ***Defendants still have not provided any privilege log even after Rumble has repeatedly pressed Defendants for it***.  (Brechbill Decl. ¶ 14.)

On June 5, 2024, Rumble served its First Sets of Interrogatories. Defendants served their Responses and Objections on July 5, 2024. Almost eight months later, Jammi served amended Responses and Objections on February 26, 2025—after the deadline for discovery under the original schedule in the case. (Ex. N.) This was not a mere technical amendment. Jammi disclosed crucial information about

████████████████████████████████████████████████████████

████████████████████████████ (*Id.*)

Based on these amendments, Rumble learned that ████████████████

████████████████████████████████████████████████████████

Defendants failed to disclose ████████████ prior to the discovery deadline even though it was responsive to Rumble's June 5, 2024 interrogatory asking Jammi to "[i]dentify every Person involved with the" October 24, 2023 article. (*Id.*)

Because Defendants' counsel represents D'Angelo, Gilmore, and Hardin (the three former Check My Ads employees subpoenaed in this case), on February 11, 2025, Rumble sent a document and deposition subpoena for Wiley to Defendants' counsel asking whether they would represent Wiley too. (Ex. R.) Defendants' counsel indicated they likely would represent Wiley, but to this date, they still have not confirmed their representation. (Ex. Q.)

**E.    The Parties jointly agree to continue discovery beyond the deadline
set in the Scheduling Order.**

In late January 2025, given that the Parties' Joint Motion remained pending,
which both parties reasonably anticipated would be granted, the Parties mutually
agreed to continue discovery beyond the deadline set by the Court's Scheduling
Order.  *See* Middle District Discovery at § I.F.  Under the agreement, the Parties
would continue expeditiously with depositions, while documents were still being
reviewed and produced, without prejudicing their rights to conduct depositions on a
more complete record after the Court's decision on the Motion to Dismiss—in other
words, once the landscape of the case took proper shape with a fulsome
understanding of what claims would be part of the case.  The Parties agreed to:

> "[C]ontinue scheduling depositions for February and, if the time for fact
> discovery is not extended, the parties can take those depositions
> pursuant to that schedule, reserving any time that remains for a follow
> up deposition if the case deadlines are subsequently kicked out.  But if
> the court does extend the discovery deadline, the taking party has a
> choice: either reschedule the deposition for a later time when it can be
> done in one go or take the deposition on the expedited schedule with no
> prior guarantee that time can be reserved."  (Ex. L.)

**F.    Rumble notices Defendants' depositions and subpoenas nonparties.**

In late December 2024, Rumble noticed the depositions of Defendants and
served Rule 45 document and deposition subpoenas on three former Check My Ads
employees: Alec D'Angelo, Rachel Gilmore, and Brandon Hardin.  Rumble initially
noticed Atkin's deposition for January 31, 2025, and Jammi's deposition for

February 4, 2025.  (Ex. J.)  It also set D'Angelo's deposition for January 21, 2025,

Gilmore's deposition for February 4, 2025, and Hardin's deposition for February 4,

2025.[5]  (*Id.*)  These depositions were all set to occur before the close of discovery.

Every deposition except Gilmore's was postponed, however, to accommodate

opposing counsel and the witnesses' schedules and because of Defendants' delays

in producing documents.  Consistent with the Middle District Discovery rules to

"reasonably attempt to accommodate the schedules of opposing counsel, parties, and

witnesses," Rumble was willing to work with opposing counsel and accommodate

the witnesses' schedules, *see* Middle District Discovery at §§ I.A.3—even though

doing so pushed the dates of some depositions beyond the discovery deadline—

because (1) the Parties had jointly submitted a motion to extend discovery, which

the Parties reasonably believed would be granted, *Varner*, 13 F.3d at 1507, and

(2) the Parties had an agreement to continue with discovery beyond the existing

deadline (Ex. L).   Rumble took Gilmore's  deposition on  February 4, 2025,

---

[5] On July 26, 2024, and September 9, 2024, Rumble served Rule 45 subpoenas on
nonparties Dewey Square Group and Media Matters for America, respectively.
(Exs. E, G.) Dewey Square Group initially refused to produce documents responsive
to Rumble's subpoena.  However, after Rumble sent a deficiency letter, (Ex. K),
Dewey Square agreed to produce responsive documents in its possession, (Ex. P).
Dewey Square has only produced two responsive documents, both of which are
relevant to opposing Defendants' summary judgment motion, but it is in the process
of producing additional documents.  Dewey Square has been delayed in producing
documents in part because it retained new counsel in January 2025.  (Ex. P.)

D'Angelo's on February 7, 2025, and Hardin's on February 19, 2025.  Defendants

still have not provided mutually agreeable dates for their own depositions.

On February 17, 2025—ten days after D'Angelo's deposition and 13 days

after the close of discovery—Defendants' counsel notified Rumble for the first time

that "D'Angelo's work email account was mistakenly deleted after he left his role at

Check My Ads, contrary to document preservation instructions."  (Ex. M.)

### G.    Defendants delay productions and fail to provide privilege logs.

Throughout discovery, Defendants also routinely failed to produce documents

by the dates they committed to, including twice representing to the Court that they

would produce documents and failing to do so.  Specifically, Defendants' counsel

stated during the November hearing on Defendants' Motion to Dismiss that

Defendants would be "producing documents soon."  (Ex. H at 66:1–12.)  In addition,

in a reply brief filed on November 12, 2024, Defendants represented that they were

"in the process of reviewing documents collected in response to Rumble's First

Requests for Production" (which were served on May 31, 2024) "and anticipate[d]

substantially completing their production no later than early December 2024."  (ECF

No. 80 at 7 n.6.)  Rumble was willing to "accommodate [these] requests for

additional time," Middle District Discovery at § I.E.1, because of the Parties Joint

Motion to extend deadlines, not knowing that Defendants would then seek to use

Rumble's willingness to cooperate against it.

Defendants did not make their first document production until January 10,
2025.  (Ex. I.)  They made subsequent productions on February 3, 2025, and
February 17, 2025.  Defendants have yet to produce privilege logs, despite Rumble's
requests and Defendants' counsel's representations that they would soon do so.
(*E.g.*, Ex. F at 2 ("Defendants intend to serve privilege logs ...."); Ex. L ("[W]e are
aiming to produce the privilege log by 2/4 although it may be the end of the week.").)

Once again, Rumble was willing to extend Defendants the courtesy of
additional time to make their productions and provide privilege logs in the spirit of
cooperation with which discovery should be practiced in this District and in reliance
on the Parties' prior agreements and Joint Motion regarding the discovery schedule.

Apparently, Defendants' delay was strategic and intentional.  Believing that
they gained the upper hand in discovery, Defendants withdrew their Motion to
Dismiss and purported to withdraw their consent to the Joint Motion to extend
deadlines, evidently to argue that the discovery window—and Rumble's opportunity
to develop its case—closed pursuant to the original Scheduling Order.

Defendants did so shortly after taking a more than five-hour deposition of
Rumble's representative pursuant to Rule 30(b)(6).  On March 3, 2025, Defendants'
counsel notified Rumble's counsel for the first time that Defendants would "file a
notice withdrawing [their] consent to the proposed six-month extension of case
deadlines."  (Ex. O.)  They filed the Notice the next day.  (ECF No. 86.)

Defendants filed their Motion for Summary Judgment on March 4.  (ECF No. 90.)  One day later (March 5, 2025)—without any prior consultation or warning—Defendants filed a notice of withdrawal of their Motion to Dismiss.  (ECF No. 100.)

## ARGUMENT

### I.    The Court Should Deny Defendants' Motion For Summary Judgment Under Rule 56(d).

Once Defendants realized the Court would not rule on the Parties' Joint Motion to Modify the Scheduling Order before the summary judgment deadline, Defendants made a calculated decision to slow roll and withhold discovery to deny Rumble access to relevant facts.  Thus, the Court should deny as premature, or at a minimum defer consideration of, Defendants' pending motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d).

Rule 56(d) states, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to ... take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).  Rule 56(d) applies in situations such as this "where there has been an opportunity to conduct discovery and the nonmoving party requires additional discovery in order to oppose summary judgment." *United States v. Real Prop. & Improvements*, 2014 WL 3941156, at *3 (N.D. Cal. Aug. 11, 2014).  A motion under Rule 56(d) "should be liberally treated." *Est. of Todashev by Shibly v.*

*United States*, 815 F. App'x 446, 453–55 (11th Cir. 2020); *see also Walters v. City of Ocean Springs*, 626 F.2d 1317, 1321 (5th Cir. 1980) (same); *Lamberth v. Advanced Mktg. & Processing, Inc.*, 2023 WL 3584520, at *1–2 (M.D. Fla. May 22, 2023) (Honeywell, J.) (granting Rule 56(d) motion where plaintiff "attempt[ed] to obtain the requested materials" and defendant "chose[] not to produce" them).

Here, as detailed above, Rumble has pursued discovery diligently—particularly under the circumstances where Defendants' Motion to Dismiss and the Parties' Joint Motion to extend deadlines remain pending, and the Court indicated that Rumble would most likely have an opportunity to replead. Rumble has been unable to obtain facts needed for its summary judgment Opposition because of Defendants' dilatory tactics and gamesmanship, including their failure to (1) produce a privilege log, (2) disclose a relevant witness and alert Rumble to their spoliation of documents until after the discovery deadline, and (3) provide mutually agreeable dates for their own depositions.

### A.    Defendants have not produced a privilege log, despite Rumble's requests that they do so and their assurances that they would.

Defendants have withheld responsive documents on the basis of the journalist privilege and other purported First Amendment privileges. Rumble has objected to Defendants' privilege assertions and made those objections abundantly clear. (Ex. D.) After meeting and conferring with Defendants' counsel, Rumble agreed to defer a motion to compel documents withheld as privileged until after Defendants

produced a privilege log.  Defendants have repeatedly said they would produce a privilege log but have failed to do so.  (*E.g.*, Ex. L.)

In the spirit of the cooperation, Rumble accommodated Defendants' counsel's requests for additional time to produce their privilege log.  *See* Middle District Discovery § I.A.3.  Moreover, Rumble's willingness to accommodate Defendants' requests was made in reliance on the Parties' ***Joint*** Motion to Modify the Scheduling Order and agreement to continue discovery beyond the deadline.

As detailed above, Rumble has been diligent in conducting discovery.  The Parties' filed their Joint Motion to Modify the Scheduling Order more than two months before the close of discovery.  Rumble did not wait until the eleventh hour to seek the requested relief.  Nor has it been sitting on its hands in the interim. Rumble has propounded document requests, served interrogatories, engaged in meet and confer discussions, and taken three depositions, with more noticed that have yet to be scheduled.  *See Todashev*, 815 F. App'x at 454 (granting Rule 56(d) motion where plaintiff's failure to conduct discovery was not "due to inactivity or delay").

Rumble has been unable to obtain evidence necessary to oppose Defendants' summary judgment motion solely because of Defendants' dilatory tactics.  *See Lamberth*, 2023 WL 3584520, at *1–2.  Specifically, Defendants' failure to timely provide privilege logs, as they said they would, precluded Rumble from moving to compel discovery to refute Defendants' actual malice defense.  (ECF No. 90 at § V.)

Rumble cannot move to compel the production of documents improperly withheld as privileged before it receives Defendants' privilege log because privilege "analysis ... cannot be conducted in a vacuum." *Quality of Life, Corp. v. City of Margate*, 2018 WL 8787785, at \*3 (S.D. Fla. Sept. 14, 2018). Defendants must identify documents withheld as privileged with sufficient particularity for Rumble and the Court to evaluate Defendants' privilege assertions. Fed. R. Civ. P. 26(b)(5); *Dragon Jade Int'l, Ltd. v. Ultroid, LLC*, 2019 WL 5887171, at \*6 (M.D. Fla. Nov. 12, 2019) (noting that court could not analyze work product assertions in a vacuum).

Rumble's belief that Defendants are improperly withholding relevant documents as privileged is not speculative or hypothetical. Indeed, on March 4 (the day summary judgment motions were due) nonparty Dewey Square Group produced two documents █████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ (Ex. A at DSG 003.) ███████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████ (*Id.*) This fact is directly relevant to showing that Atkin's statement in September 2023 that Rumble was "90% funded" by Google Ads was indisputably false, and she knew as much. Atkin responded that ████████████████

███████████████████████████████ (*Id.* at DSG 004.) Her response shows

19

hostility and ill will toward Rumble, which is strong evidence of actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667–68 (1989) (evidence of ill will and motive is supportive of finding actual malice).

This is just one example, based on Dewey Square's limited production to date, that shows Defendants have withheld relevant communications either as privileged or in violation of their discovery obligations.[6] That "'[t]he key evidence lies in the control of the moving party,'" as is the case here, "may well be the most recognized reason *why* a party should be given the shelter of Rule 56(d)." *Todashev*, 815 F. App'x at 453; *id.* at 455 (pendency of nonparty subpoenas weighs in favor of granting Rule 56(d) motion).

Thus, denying Defendants' Motion for Summary Judgment under Rule 56(d) is appropriate here, where the Parties filed a Joint Motion to extend discovery, Rumble acted diligently and in reliance on Defendants' representations, and Defendants' failure to produce their privilege log within the discovery deadline

---

[6] Dewey Square initially said it would produce these documents to Rumble on March 3, 2025, the day before summary judgment motions were due, so Rumble would have time to evaluate the documents and incorporate them in its Motion for Partial Summary Judgment. However, according to Dewey Square's counsel, the production was delayed when Defendants contacted Dewey Square and improperly asserted the journalist privilege. (Ex. P.) The journalist privilege applies to *journalists*—it does not shield *sources* from their discovery obligations. *See Est. of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 241 (D.D.C. 2013) ("The reporter's privilege protects a journalist from being compelled to disclose his or her sources.").

denied Rumble the ability to move to compel facts need to oppose summary judgment. *See Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 570 (11th Cir. 1990) ("Generally summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests."); *Breakwater Commons Assoc., Inc. v. Empire Indem. Ins. Co.*, 2021 WL 1216535, at *1 (M.D. Fla. Mar. 31, 2021) (summary judgment premature where parties jointly requested discovery extensions); *Crowe v. Trustgard Ins. Co.*, 2013 WL 12291014, at *1–2 (E.D. Ky. June 6, 2013) (granting Rule 56(d) motion where defendant "delayed production of the privilege log" until after filing for summary judgment).

At a minimum, the Court should defer ruling on Defendants' summary judgment motion until Rumble has an opportunity to review Defendants' privilege log and file a motion challenging improper journalist or other privilege assertions.

### B. Defendants waited until after the close of discovery to disclose a relevant witness and alert Rumble to the destruction of documents.

Jammi's failure to identify ██████████████████████ and Defendants' failure to disclose during the discovery period that Check My Ads deleted an email account used by D'Angelo also weigh in favor of denying Defendants' motion for summary judgment until Rumble has (1) obtained documents from and taken the deposition of ████ and (2) obtained discovery into the circumstances surrounding the deletion of D'Angelo's email to determine whether sanctions are warranted. Fed. R. Civ. P. 37(e).

21

███████████████████████████████

█████████████████████████  As such, documents and testimony from ████ are

highly relevant and likely to shed light onto the steps Defendants took to research

the October 24, 2023 article and the information they knew prior to publication—

information that is crucial to showing that Defendants acted with actual malice. *See*

*Herbert v. Lando*, 441 U.S. 153, 160 n.6 (1979) (evidence of actual malice can

include "conversations among the editors and author concerning the research and

development of the article"); *see generally Krass v. Obstacle Racing Media, LLC*,

667 F. Supp. 3d 1177 (N.D. Ga. 2023) (research for article relevant to actual malice).

### C. Defendants have not proposed mutually agreeable dates for their own depositions.

Finally, Rumble has not yet had a chance to depose either Atkin or Jammi,

despite noticing depositions more than a month before the close of discovery.

Rumble agreed to postpone those depositions to accommodate Defendants'

schedules, and the Parties have been unable to identify mutually agreeable dates.

## II. The Court Should Strike Defendants' Notice of Withdrawal of Consent.

In addition to denying, or at least deferring consideration of, Defendants'

Motion for Summary Judgment, this Court should strike Defendants' improper

Notice of Withdrawal of Consent to the Parties' Joint Motion to Modify the

Scheduling Order. (ECF No. 86.) Defendants' brazen gamesmanship in seeking to

renege on this prior agreement "fl[ies] in the face of fairness" and should be rejected

under the doctrine of equitable estoppel.  *See Ice Rak, LLC v. Rita's Franchise Co., LLC*, 2024 WL 1118810, at *7 (M.D. Fla. Mar. 14, 2024); *see also Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir.1988) ("The rules of discovery were not designed to encourage procedural gamesmanship ... to gain some advantage."); Middle District Discovery at § I.A.  As explained, Rumble has acted in reliance on Defendants' prior agreement—trying to accommodate Defendants, opposing counsel, and nonparties' schedules and, what appeared to be, reasonable requests for extensions.  Rumble would be prejudiced if Defendants are allowed to withdrawal their consent now and the Joint Motion is denied.[7]

In addition, Defendants' Notice of Withdrawal of Consent should be stricken because it is procedurally improper.  *Jean v. Minn. Life Ins. Co.*, 2020 WL 2926663, at *3 (M.D. Fla. May 12, 2020) (noting courts' "inherent authority to strike improperly-filed papers").  If Defendants seek to withdraw their consent, they must do so by motion.  *See Stovall v. City of Cocoa, Fla.*, 117 F.3d 1238, 1242 (11th Cir. 1997) (reversing district court order granting City's motion to withdraw joint motion for approval of consent decree and holding that court could not reject consent decree "solely because the City no longer wished to honor its agreement"); *cf. Dortch v.*

---

[7] Rumble agreed to postpone Defendants' depositions because the Parties filed their Joint Motion to extend discovery, which Rumble reasonably anticipated would be granted.  Defendants should not be allowed to withdraw their consent after Rumble acted to its detriment in justifiable reliance on it.

*State*, 137 So. 3d 1173, 1176 (Fla. 1st DCA 2014) ("A stipulation ... is binding upon

the parties and upon the Court" and "cannot be 'impeached or swept aside' merely

by the 'bald statement' of a party desiring to renege."); *Eagle FL VI SPE, LLC v.

T&A Fam. P'ship, Ltd.*, 177 So. 3d 1277, 1280 (Fla. 2d DCA 2015) (similar).

**III.    The Court Should Grant The Parties' Joint Motion To Extend Discovery
Because Good Cause Has Been Shown.**

The Court should also grant the Parties' pending Joint Motion to Modify the

Scheduling Order because, as explained in that Motion, the Parties have shown good

cause to extend deadlines.  (ECF No. 83 at 2 (citing, *e.g.*, *Markle v. Markle*, 22-cv-

511 (M.D. Fla.) (Honeywell, J.) (nine-month extension to scheduling order)).

Defendants' Notice seems to suggest that, not only are they withdrawing their

consent, but they also are withdrawing the Joint Motion.  (ECF No. 86 at 3 ("To the

extent that Rumble renews or refiles its motion ... , Defendants respectfully reserve

the right to oppose that motion.").)  However, Defendants have no authority or right

to withdraw a joint motion without Rumble's consent.  The Motion to Modify the

Scheduling Order remains before the Court, and fairness dictates that Defendants

not be allowed to oppose their own motion.  *See Ice Rak*, 2024 WL 1118810, at *7.

## CONCLUSION

Rumble respectfully requests that the Court deny or defer Defendants' Motion

for Summary Judgment, strike Defendants' Notice of Withdrawal of Consent to the

Parties' Joint Motion to Modify the Scheduling Order, and grant the Joint Motion.

24

Rumble also respectfully requests a Case Management Conference to seek the Court's guidance on how to most efficiently navigate the procedural morass Defendants' gamesmanship has created. If the Court cannot consider this Motion prior to Rumble's March 25, 2025 deadline to file its summary judgment Opposition, Rumble requests a temporary stay of the deadline to respond to Defendants' summary judgment motion until 14-days after the Court decides this Motion.

## LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), Rumble certifies that the Parties met and conferred by phone on March 10, 2025. Defendants intend to oppose this Motion.

Dated: March 10, 2025         Respectfully submitted,

/s/ *Jered T. Ede*
Jered T. Ede (Fla. Bar No. 1045898)
Elizabeth M. Locke, P.C. (admitted *pro hac vice*)
Nicholas J. Brechbill (admitted *pro hac vice*)
Kathryn G. Humphrey (admitted *pro hac vice*)
CLARE LOCKE LLP
10 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
Email: jered@clarelocke.com
Email: libby@clarelocke.com
Email: nick@clarelocke.com
Email: kathryn@clarelocke.com