# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| RUMBLE INC.,<br><br>      Plaintiff,<br><br>- against -<br><br>NANDINI JAMMI, CLAIRE ATKIN, and JOHN DOE NOS. 1-10,<br><br>      Defendants. | Case No. 8:23-cv-02718-CEH |

**DEFENDANT NANDINI JAMMI'S SECOND AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF RUMBLE INC.'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Nandini Jammi ("Jammi"), by and through her undersigned attorneys, hereby respond and object to the First Set of Interrogatories (the "Interrogatories" or, singularly, an "Interrogatory") of Plaintiff Rumble Inc. ("Rumble").

In responding to the Interrogatories, Jammi does not waive or intend to waive the attorney-client, work product, reporters' privilege or any other privilege or immunity that otherwise would entitle them to refuse to produce the information they provide or agree herein, or to object to the use of such information or documents for any purpose, nor does Jammi waive or intend to waive such privileges with respect to subsequent interrogatories or any other form of discovery. Nor, in so responding, do Defendants concede the admissibility, relevance, or materiality to this action of the information they provide or agree to provide.

Jammi reserves the right to correct, amend, modify, or supplement its responses and objections to these Requests at any time in the future, as warranted by the circumstances. Jammi's response to each interrogatory is based on information and documents currently available and obtained after a reasonable search. Therefore, responses provided herein are subject to change, and additional documents and information may be produced as Jammi acquires additional information and completes her review and analysis of information and documents obtained and to be obtained. To the extent Jammi obtains additional discoverable information or documents as a result of such investigation, she will comply with their obligations, if any, to supplement these responses. Therefore, the following answers are given without prejudice to Jammi's right to provide, at or before the time of trial, subsequently discovered evidence, or evidence relating to proof of facts later discovered to be material, including evidence produced at trial by Jammi or her witnesses. Defendant's answers must be construed as given on the basis of their present knowledge.

## **SPECIFIC RESPONSES AND OBJECTIONS**

## **INTERROGATORY NO. 1**

Identify every Person involved with the Publications, including but not limited to every Person who participated in researching, drafting, editing, photo editing, fact-checking, or publishing the Publications.

**RESPONSE TO INTERROGATORY NO. 1**

Jammi objects to the Interrogatory as vague and ambiguous as to the meaning of "every Person involved with the Publications" and will interpret this to mean "every person" employed by Check My Ads "who participated in the researching, drafting, editing, … fact-checking, or publishing the Publications." Jammi objects to the request for information about the "photo editing" of the Publications as irrelevant, and will not produce information in response to that portion of the request, because the Publications' artwork is not at issue in this action. Jammi further objects to the term "editing" as vague and ambiguous and will interpret this term to exclude copy editing, which is not at issue in this action. Jammi further objects to this Interrogatory because it calls for information newsgathering and/or confidential source that is protected by Fla. Stat. § 90.5015, Md. Cts. & Jud. Proc. Code Ann. § 9-112, N.Y. Civ. Rights Law § 79-h, the Maryland, Florida and New York State Constitutions, the First and Fourteenth Amendments to the U.S. Constitution, and any other applicable statutory, constitutional, or common-law privilege that protects journalists from disclosing unpublished material and/or information obtained during the course of their newsgathering activity including but not limited to the identity of their sources (collectively, the "Reporters' Shield Laws").

Subject to these objections, Jammi responds as follows. Jammi was the author and publisher of Jammi's August 16, 2023 Post, Jammi's September 26, 2023 Post, Jammi's October 3, 2023 Post (collectively, the "Jammi Posts").[1]

Atkin was the author and publisher of Atkin's September 26, 2023 Post.

The October 24, 2023 Article was published by Check My Ads Institute and written by its reporter Rachel Gilmore. The October 24, 2023 Article was edited by Brandon Hardin. Alec D'Angelo contributed research for the October 24, 2023 Article. The graphic designer for the October 24, 2023 Article was Joseph Katool. Claire Atkin and Nandini Jammi reviewed and edited a near-final version of the October 24, 2023 Article prior to publication. Sarah Kay Wiley also reviewed the October 24, 2023 Article prior to publication.

**INTERROGATORY NO. 2**

For each Person Identified in response to Interrogatory No. 1, Identify which publication(s) they were involved with and describe their role (e.g., researching, writing, editing, publishing, etc.).

**RESPONSE TO INTERROGATORY NO. 2**

Jammi incorporates by reference her response and objections to Interrogatory No. 1 as her response and objections to this Interrogatory No. 2.

---

[1] Unless otherwise stated, the defined terms Jammi's August 16, 2023 Post, Atkin's September 26, 2023 Post, Jammi's September 26, 2023 Post, Jammi's October 3, 2023 Post and October 24, 2023 Article (collectively, the "Statements in Suit") shall have the same meaning as ascribed to them in the Definitions provided by Rumble. *See* Plaintiff Rumble's First Set of Interrogatories to Defendant Nandini Jammi, ¶¶ 18-23.

**INTERROGATORY NO. 3**

For each Person Identified in response to Interrogatory 1, describe the steps they took to verify the accuracy of the information communicated in the publication(s) with which they were involved, including by Identifying all webpages, articles, social media posts, and other Documents they reviewed relating to Rumble's advertising.

**RESPONSE TO INTERROGATORY NO. 3**

Jammi objects to this Jammi further objects to this Interrogatory because it calls for newsgathering and/or confidential source information that is protected by the Reporters' Shield Laws. Jammi further objects to this Interrogatory as calling for information outside of her possession, custody or control relating to Atkin's September 26, 2023 Post – which she played no role in researching, writing or editing. Accordingly, Jammi will respond to this Interrogatory with respect to the October 24, 2023 Article and Jammi Posts only.

Subject to these objections, Jammi responds that she will respond to this Interrogatory by producing documents pursuant to Fed. R. Civ. P. 33(d). Jammi further responds that she reviewed the October 24, 2023 Article prior to publication and, in doing so, relied upon her own personal knowledge of the subject matter contained therein and further relied on D'Angelo, Gilmore and Hardin, who researched, wrote and primarily edited the October 24, 2023 Article as reflected in their deposition testimony and documents produced in this action (which are incorporated by reference herein). Jammi further responds that she relied upon the following facts, which are not exhaustive and may be supplemented by the production

of documents and other information discovered in this action, including the fact that Rumble maintains a seller account with Google through which it continues to receive revenue for hosting advertisements placed by Google customers on the Rumble platform. Jammi also relied on observations that advertisements from blue-chip advertisers that partner with Google, like Mazda, Ruggable Ford and Lifelock, appeared on Rumble and that these advertisements indicate that significant revenue flows from Google to Rumble. Jammi also relied upon social media posts from Rumble and its affiliates, including a December 26, 2022, social media post from Rumble stating that "[t]he top two external ad networks Rumble uses, which includes Google, represent less than 20% of our revenue in Q3, down from 45% in Q2." Jammi also relied upon filings Rumble filed with the SEC indicating that Rumble derived a material portion of its revenue from Google. Jammi also relied upon news articles reporting that Rumble relied upon advertising revenue from Google.

**INTERROGATORY NO. 4**

Identify and describe all instances in which You worked with Media Matters on articles, social media posts, tweets, statements, publications, or communications relating to Rumble.

**RESPONSE TO INTERROGATORY NO. 4**

Jammi objects to this Interrogatory because it calls for information that is protected by the Reporters' Shield Laws. Jammi further objects to this Interrogatory because it calls for irrelevant information unrelated to the Statements in Suit.

Subject to these objections, Jammi responds that she is not aware of any instances in which she has worked with Media Matters on articles, social media posts, tweets, statements, publications, or communications relating to Rumble.

**INTERROGATORY NO. 5**

Identify and describe all instances in which You worked with Dewey Square on articles, social media posts, tweets, statements, publications, or communications relating to Rumble.

**RESPONSE TO INTERROGATORY NO. 5**

Jammi objects to this Interrogatory because it calls for information that is protected by the Reporters' Shield Laws. Jammi further objects to this Interrogatory because it calls for irrelevant information unrelated to the Statements in Suit.

Subject to these objections, Jammi responds that she is not aware of any instances in which she has worked with Dewey Square on articles, social media posts, tweets, statements, publications, or communications relating to Rumble.

**INTERROGATORY NO. 6**

Identify and describe all tools and metrics used by each Person Identified in response to Interrogatory 1 for tracking or quantifying viewership of or engagement with the October 24, 2023 Article.

**RESPONSE TO INTERROGATORY NO. 6**

Jammi responds that Check My Ads has the capacity to track or quantify viewership of an email newsletter containing the October 24, 2023 Article (the "Newsletter"). Jammi further responds that a link to the October 24, 2023 Article was

posted to X (f/k/a Twitter) and that X purports to display the number of times those posts were viewed – although these metrics do not show how many times the October 24, 2023 Article itself was accessed or read. Jammi does not use and is not aware of any other tools or metrics available to track or quantify viewership of or engagement with the October 24, 2023 Article.

**INTERROGATORY NO. 7**

Identify and describe the number of times each day the October 24, 2023 Article has been viewed or accessed from the day it was published to the present.

**RESPONSE TO INTERROGATORY NO. 7**

Jammi responds that she will respond to this Interrogatory pursuant to Fed. R. Civ. P. 33(d) by producing documents containing responsive data relating to the Newsletter to the extent that it is available and kept in the ordinary course of business.

**INTERROGATORY NO. 8**

Identify any and all publications (written or electronic), media, Social Media posts, blog posts, Facebook posts, X posts, message board posts or comments, or internet sites of which You are aware that have ever mentioned, described, summarized, quoted, or cited the Publications.

**RESPONSE TO INTERROGATORY NO. 8**

Jammi objects to this Interrogatory as overly burdensome and disproportionate to the needs of the case because documents mentioning, describing summarizing, quoting, or citing the Publications – *e.g.*, copies of all social media posts responding to the Statements in Suit – are publicly available can be more efficiently be produced in

response to a Request for Production of Documents. Jammi further objects to the word "publications (written or electronic)" as vague and ambiguous and will interpret this term to exclude documents created for the purposes of this lawsuit.

Subject to these objections, Jammi responds that she is not currently aware of any specific publications mentioning, describing, summarizing, quoting or citing the Publications.

**INTERROGATORY NO. 9**

Describe all facts to support Your contention that Rumble "depend[s] on Google for [its] business," as stated in Jammi's August 16, 2023 Post.

**RESPONSE TO INTERROGATORY NO. 9**

Jammi objects to this request as premature since discovery is in its early stages and additional information is likely to be discovered to support the contention referenced above and the Jammi Posts more generally. Jammi further objects because this Interrogatory calls for information protected by the Reporters' Shield Laws.

Subject to these objections, Jammi responds that the following facts support the statement quoted above and the Jammi Posts more generally: Rumble maintains a seller account with Google through which it continues to receive revenue for hosting advertisements placed by Google customers on the Rumble platform; adverts from blue-chip advertisers that partner with Google, like Mazda, Ruggable, Ford and Lifelock, appeared on Rumble and the placement of these advertisements indicate that significant revenue flows from Google to Rumble; a significant proportion of Rumble's traffic (which drives ad revenue) derives from Google; Rumble stated in a

December 2022 social media post that "[t]he top two external ad networks Rumble uses, which includes Google, represent less than 20% of our revenue in Q3, down from 45% in Q2;" Rumble filed statements with the SEC indicating that Rumble derived a material portion of its revenue from Google – including 86% of its revenue as late as the end of 2021; news articles have reported that Rumble relied upon advertising revenue from Google.

**INTERROGATORY NO. 10**

Describe all facts to support Your contention that Rumble is "largely monetized through Google Video Partners (GVP)," as stated in Jammi's September 26, 2023 Post.

**RESPONSE TO INTERROGATORY NO. 10**

Jammi incorporates by reference her response and objections to Interrogatory No. 9 as her response and objections to this Interrogatory No. 10.

**INTERROGATORY NO. 11**

Describe all facts to support Your contention that "[w]ithout @GoogleAds, Rumble would not be viable," as stated in Jammi's October 3, 2023 Post.

**RESPONSE TO INTERROGATORY NO. 11**

Jammi incorporates by reference her response and objections to Interrogatory No. 9 as her response and objections to this Interrogatory No. 11.

**INTERROGATORY NO. 12**

Describe all facts to support Your contention that "Rumble is heavily monetized by Google Ads" and "heavily dependent on Google Ads, by far its largest advertising partner," as stated in the October 24, 2023 Article.

**RESPONSE TO INTERROGATORY NO. 12**

Jammi objects to this Interrogatory because it calls for information that is protected by the Reporters' Shield Laws. Jammi further objects to this Interrogatory as calling for information outside of her possession, custody or control relating to the October 24, 2023 Article – which she played no role in researching, writing or editing.

Subject to these objections, Jammi incorporates by reference her response and objections to Interrogatory No. 9 as her response and objections to this Interrogatory No. 12.

**INTERROGATORY NO. 13**

Identify all witnesses you expect to call to testify at trial.

**RESPONSE TO INTERROGATORY NO. 13**

Jammi objects to this Interrogatory as premature given the current status of discovery and for imposing obligations beyond what is required by the relevant Rules.

Subject to these objections, Jammi declines to answer this Interrogatory and reserves all rights to identify trial witnesses in due course.

Dated February 26, 2025

SHULLMAN FUGATE PLLC            DAVIS WRIGHT TREMAINE

By:   **_/s/ Sarah Papadelias_**    .
Deanna K. Shullman (SBN 514462)
Sarah M. Papadelias (SBN 0125098)

2101 Vista Parkway, Ste. 4006
West Palm Beach, Florida 33411
Telephone: (561) 429-3619

dshullman@shullmanfugate.com
spapadelias@shullmanfugate.com

LLP

John M. Browning*
Katherine M. Bolger*

1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 489-8230

jackbrowning@dwt.com
katebolger@dwt.com
*Admitted *Pro Hac Vice*

*Counsel for Defendant Claire Atkin*

## VERIFICATION

I, Nandini Jammi, pursuant to 28 U.S.C. § 1746, declare and say as follows under penalty of perjury:

I make the foregoing Interrogatory responses based on my personal knowledge, except where otherwise stated. I am over the age of 18 years and am fully competent to testify to the matters stated in this declaration. I declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and belief.

Executed this 26th day of February, 2025, in Maryland.

*[signature: Nandini Jammi]*

_____

NANDINI JAMMI

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2025, a true and correct copy of the foregoing was served via email on all counsel of record.

                                                         */s/ John M. Browning*     .
                                                         John M. Browning